[Cite as *State v. Jarvis*, 2020-Ohio-1127.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT 2019-0029 |
| ALBERT JARVIS | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING: Criminal appeal from the Muskingum County Court of Common Pleas, Case No. CR2018-0711

JUDGMENT: Reversed and Remanded

DATE OF JUDGMENT ENTRY: March 23, 2020

APPEARANCES:

For Plaintiff-Appellee

D. MICHAEL HADDOX
Prosecuting Attorney
BY: TAYLOR BENNINGTON
Assistant Prosecuting Attorney
27 North Fifth St., Box 189
Zanesville, OH 43701

For Defendant-Appellant

STEPHEN HARDWICK
Assistant Public Defender
250 East Broad Street, Suite 1400
Columbus, OH 43215

*Gwin, P.J.*

{¶1} Defendant-appellant, Albert B. Jarvis, IV ["Jarvis"] appeals from the Muskingum County Court of Common Pleas finding that the violent offender registration statue that became effective March 20, 2019, could be retroactively applied to his offense which occurred November 4, 2018.

*Facts and Procedural History*

{¶2} On March 4, 2019, Jarvis entered negotiated guilty pleas to Kidnapping, with a firearm specification, Disrupting Public Service, and Improper Handling of a Loaded Firearm in a motor vehicle. The events that formed the basis for the charges occurred on November 4 and 5, 2018. *Plea Transcript*, March 4, 2019 at 12-13. Sentencing was deferred pending the preparation of a Pre-Sentencing Investigation Report. Id. 15.

{¶3} On March 20, 2019, R.C. 2903 41, *et seq.*, "Sierah's Law" became effective. Sierah's Law creates a Violent Offender Database ["VOD"], establishes a presumption that violent offenders will be required to enroll in it, and provides that a violent offender enroll in the database for a minimum of ten years. Re-enrollment is required on an annual basis.

{¶4} On March 28, 2019, counsel for Jarvis filed a "Notice of Objection & Motion for a Hearing on the Violent Offender Database." (Docket Entry No. 23). Counsel requested a hearing "pursuant to ORC 2903.41 et al on the issue of whether the defendant shall be required to register with the Violent Offender Database."

{¶5} The sentencing hearing in the Jarvis' case occurred April 1, 2019. At the start of the hearing, Jarvis, through counsel, objected to the violent offender database enrollment requirements. Counsel argued that since Jarvis' crimes were committed in

November 2018, application of the registration requirements would violate the prohibition against retroactive laws contained in Section 28, Article II of the Ohio Constitution and "ex post facto laws." *Sentencing Transcript,* Apr 1, 2019 at 5. Counsel noted that Jarvis signed the Notice; however, he objected to the stipulation to the violent offender database. Id. at 6-7; 17.

{¶6}   The trial court overruled Jarvis' motion and objection. *See, Judgment Entry,* filed Apr 2, 2019 at 1. (Docket No. 25). The trial court sentenced Jarvis to four years on the Kidnapping offense, mandatory three years on the firearm specification, 18 months on the Disrupting Public Services offense, and 18 months on the Improper Handling Offense. The court ordered the sentences be served concurrent to each other but consecutive to the mandatory firearm specification, for an aggregate sentence of seven years. The trial court also provided Jarvis with "A Notice of Duties to Register as a Violent Offender (ORC 2903.41, et seq.)". (Docket No. 24). The trial court advised Jarvis of his duties to register on the violent offender registry. *Sentencing Transcript,* Apr 1, 2019 at 8.

*Assignment of Error*

{¶7}   Jarvis raises one Assignment of Error,

{¶8}   "I. OHIO'S VIOLENT OFFENDER REGISTRY IS PUNITIVE AND NOT REMEDIAL. AS A RESULT, THE TRIAL COURT ERRED BY RETROACTIVELY APPLYING THE STATUTE TO MR. JARVIS."

{¶9}   Jarvis argues that the provisions of R.C. 2903.41, *et seq* cannot be constitutionally applied to a defendant whose offense occurred before March 20, 2019.

**STANDARD OF APPELLATE REVIEW.**

{¶10}  "When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate."  *Medical Mutual of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13 (*citing, Swartzentruber v. Orrville Grace Brethren Church*, 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619 (9th Dist.), ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. Stark No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50).  Application of statutory language, to determine whether it can apply to an offender whose offense occurred before the effective date of the enactment is a question of law that we must review de novo.

### *Ohio's Violent Offender Registration Requirement, R.C 2903.41, et seq*

{¶11}  Effective March 20, 2019, Ohio's sub. S.B. 231, "Sierah's Law," created a violent offender database.  The database defines a "violent offender" as (1) **on or after the act's effective date** is convicted or pleads guilty to aggravated murder [R.C. 2903.01], murder [R.C. 2903.02], voluntary manslaughter [R.C. 2903.03], kidnapping [R.C. 2905.01], abduction [F2] [R.C. 2905.02], or any attempt or conspiracy to commit or complicity in committing any of those offenses, or (2) **on the date has been convicted** of any of those offenses **and** is serving a term of confinement for the offense.  R.C. 2903.41(A) (emphasis added).The act creates a rebuttable presumption that the violent offender is required to enroll in the violent offender database (VOD) with respect to the offense that so classifies the person.  R.C. 2903.42(A)(1).

{¶12}  Each violent offender is also presumed to have a duty to enroll, duty to re-enroll, and duty to provide notice of a change of address (VOD duties) with respect to the qualifying offense for ten years after the offender initially enrolls.  Each violent offender must be informed of the following:

(1) The presumption of VOD duties;

(2) The offender's right to file a motion to rebut the presumption;

(3) The procedure and criteria for rebutting the presumption; and

(4) The effect of a rebuttal and the post-rebuttal hearing procedures

and possible outcome.

{¶13} The entity responsible for making the notification varies, depending on the date of conviction. If the person is classified a violent offender based on a conviction that occurs on or after the act's effective date (March 20, 2019), the sentencing court must inform the offender before sentencing. R.C. 2903.42(A)(1)(a*). If the person is classified a violent offender on the basis of a conviction preceding that date, the official in charge of the institution in which the offender is confined, or the official's designee, must provide that information in writing a reasonable period of time before the offender is released.* R.C. 2903.42(A)(1)(b). (Emphasis added).

{¶14} If the offender files a motion to rebut the presumption that he or she is required to register, the offender has the burden of proof, by a preponderance of the evidence, that the offender was not the principal offender in the commission of the offense that classifies the person as a violent offense. R.C. 2903.42 (A)(4). However, even if the offender successfully rebuts the presumption, the trial court can still issue an order that the offender be required to enroll. The trial court must consider (1) whether the offender has any convictions for any offense of violence prior to the one at issue, and whether those prior convictions indicate that the offender has a propensity for violence; (2) the results of a risk assessment conducted through use of a single validation risk assessment

tool, (3) the offender's degree of culpability or involvement in the offense at issue and (4) the public interest and safety.  R.C. 2903.42(A)(4)(a)(i)-(iv).

**Manner of Enrollment.**

{¶15}  An offender who has VOD duties must obtain from the sheriff or sheriff's designee a copy of the enrollment form prescribed by the Attorney General, complete and sign the form, and return it together with fingerprints, palm prints, and a photograph.  R. C. 2903.43 (C)(1) and (C) (3).  The VOD enrollment form must include all of the following information:

> (1) The offender's full name, any alias used, and residence address;

> (2) The offender's Social Security number;

> (3) Any driver's license number, commercial driver's license number, or state identification card number issued to the offender by Ohio or another state;

> (4) The offense of which the offender was convicted;

> (5) The name and address of any place where the offender is employed and of any school or institution of higher education that the offender is attending;

> (6) The identification license plate number of each vehicle owned or operated by the offender or registered in the offender's name, the vehicle identification number of each vehicle, and a description of each vehicle;

> (7) A description of any scars, tattoos, or other distinguishing marks on the offender.

{¶16}  R.C. 2903.43(C)(2).  The offender must re-enroll annually, in person, with the sheriff of the county in which the offender resides, or with the sheriff's designee, within

ten days prior to the anniversary of the calendar date on which the offender initially enrolled. The duty to re-enroll remains in effect for the entire ten-year enrollment period of the offender. The enrollee must re-enroll by completing, signing, and returning to the sheriff or designee a copy of the enrollment form prescribed by the Attorney General amending any information that has changed since the last enrollment, and providing any additional enrollment information required by the Attorney General. The sheriff or designee with whom the offender re-enrolls must obtain a new photograph of the offender annually at re-enrollment. Additionally, if the offender's most recent enrollment or re-enrollment was in a different county, the offender must provide written notice of the change of address to the sheriff or designee where the offender previously resided. R.C. 2903.43(D)(1).

{¶17} With the exception of the offender's Social Security number, driver's license number, or state identification number, any statements, information, photographs, fingerprints, or materials provided by an offender who has VOD duties that are in the sheriff's possession are public records open to public inspection under Ohio's Public Records Law. R.C. 2903.43(F)(3).

**Penalty for Failure to Enroll or Re-enroll.**

{¶18} The act prohibits an offender who has VOD duties from recklessly failing to enroll, re-enroll, or notify the sheriff or sheriff's designee of a change of address during the ten-year enrollment period or extended enrollment period. A violation of the prohibition is a fifth degree felony. If an offender who violates the prohibition is on parole or subject to a community control sanction, one or more post-release control sanctions, or any other type of supervised release at the time of the violation, the violation constitutes

a violation of the terms and conditions of the community control sanction, parole, post-release control sanction, or other type of supervised release R.C. 2903.43(I).

**ISSUE FOR APPEAL.**

*A. Can the VOD be applied retroactively to an individual whose offense occurred before the effective date of March 20, 2019?*

1. Prohibition against retroactive laws.

{¶19} Section 28, Article II of the Ohio Constitution states that "[t]he general assembly shall have no power to pass retroactive laws." Section 1.48 of the Ohio Revised Code requires the legislature, or rule making body to expressly state its intent in the body of the statute or rule that it is to apply to pending or past cases. The Ohio Supreme Court developed a two-part test for determining whether a statute can be applied retroactively. *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, ¶ 7–9. In the first part of the test, we "ask whether the General Assembly expressly made the statute retroactive." Id. at ¶8; *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 107(1988), *superseded on other grounds by R.C. 2745.01*. In the case at bar, R.C. 2903.41 imposes registration requirements for offenders sentenced on or after March 20, 2019 and to offenders *who have previously been convicted or pleaded guilty to enumerated offenses and are serving a prison term, term of imprisonment, or other term of confinement on March 20, 2019.* R.C. 2903.41 (A)(1) and (A)(2). *Every individual who is serving a sentence of confinement for one of the enumerated offenses on March 20, 2019 must enroll in the VOD prior to his or her release* regardless of when the offense was committed. Both sections apply regardless of when the offense was committed.

{¶20} Because the VOD was intended to apply retroactively, we must now turn to the second part of the test, which requires us to determine whether the statutory

provisions are substantive or remedial.  *Hyle* at ¶ 8.  *See also State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 10;  *State v. Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶8.

{¶21}  In *State v. Williams,* the Ohio Supreme Court noted the distension between substantive and remedial laws,

> In  *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, 929 N.E.2d 415, ¶ 37, we stated that "[i]t is well established that a statute is substantive if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction, or creates a new right.  *Van Fossen*, 36 Ohio St.3d at 107, 522 N.E.2d 489.  Remedial laws, however, are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right."  *See  Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 352–353, 721 N.E.2d 28, *quoting Miller v. Hixson* (1901), 64 Ohio St. 39, 51, 59 N.E. 749 ("The retroactivity clause nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective]' " [bracketed material sic] ).

129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶9.

2. The VOD and remedial v. punitive.

{¶22}  "There is no absolute test to determine whether a retroactive statute is so punitive as to violate the constitutional prohibition against ex post facto laws; such a determination is a 'matter of degree.'"  *State v. Cook*, 83 Ohio St.3d 404, 418, 700 N.E.2d

570(1998) (*quoting California Dept. of Corrections v. Morales,* 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995)).  In *Williams*, the Ohio Supreme Court considered whether the reporting requirements for sexual offenders created under the Adam Walsh Act could constitutionally be retroactively applied to an offender who committed a sex offense prior to its enactment.  The Court held that the Adam Walsh Act, part of which was expressly made retroactive, is punitive, and "as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws."  *Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, at ¶ 16 and at the syllabus.  Subsequently, the Court clarified that only persons who commit their underlying offense on or after the effective date of the Adam Walsh Act can be constitutionally subjected to its requirements. *In re Bruce S.*, 134 Ohio St.3d 477, 2012-Ohio-5696, 983 N.E.2d 350; *In re Von,* 146 Ohio St.3d 448, 2016-Ohio-3020, 57 N.E. 3d 1158, ¶17.

{¶23}  In analyzing whether the Adam Walsh Act was substantive or remedial, the *Williams* court first noted that under the prior version of the statute the offender "might not have been subject to registration requirements."  *Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, at ¶18.  However, under the new statute the offender is "automatically subject to registration requirements that obligate him to register in person in the county where he resides in the county where he works, and in the county where he attends school."  Id.  The Court in *Williams* cited the dissenting opinion of Justice Lanzinger in *State v. Ferguson,* 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E. 2d 110, for further evidence of the punitive nature of the Adam Walsh Act's registration requirements,

"'The following comparisons show that the current laws are more complicated and restrictive than those at issue in [*State* v.] *Williams* [88 Ohio St.3d 513, 728 N.E.2d 342(2000)] and [*State v.*] *Cook* [83 Ohio St.3d 404, 700 N.E.2d 570 (1998)]. First, the label "sexual predator" is now permanent for adult offenders, R.C. 2950.07(B)(1), whereas previously, offenders had the possibility of having it removed. Former R.C. 2950.09(D), Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, 2621–2623. Second, registration duties are now more demanding and therefore are no longer comparable to the inconvenience of renewing a driver's license, as *Cook* had analogized. *Cook*, 83 Ohio St.3d at 418, 700 N.E.2d 570. Persons classified as sex offenders must now personally register with the sheriff of the county in which they reside, work, and go to school. R.C. 2950.04(A). Sexual predators must personally register with potentially three different sheriffs every 90 days, R.C. 2950.06(B)(1)(a), which is hardly comparable to the slight inconvenience of having one's driver's license renewed every four years. Third, community notification has expanded to the extent that any statements, information, photographs, or fingerprints that an offender is required to provide are public record and much of that material is now included in the sex-offender database maintained on the Internet by the attorney general. R.C. 2950.081. In *Cook*, we considered it significant that the information provided to sheriffs by sex offenders could be disseminated to only a restricted group of people. *Cook*, 83 Ohio St.3d at 422, 700 N.E.2d 570. Fourth, new restrictions have been added to R.C.

Chapter 2950. Enacted initially as part of Sub.S.B. No. 5, 125th General Assembly, approved July 31, 2003, R.C. 2950.031 prohibits all classified sex offenders, not just those convicted of sex offenses against children, from residing within 1,000 feet of any school premises. Fifth, a sheriff is now permitted to request that the sex offender's landlord or the manager of the sex offender's residence verify that the sex offender currently resides at the registered address. R.C. 2950.111(A)(1). According to R.C. 2950.111(C), "[a] sheriff or designee of a sheriff is not limited in the number of requests that may be made under this section regarding any registration, provision of notice, or verification, or in the number of times that the sheriff or designee may attempt to confirm, in manners other than the manner provided in this section, that an offender * * * currently resides at the address in question."

"'While protection of the public is the avowed goal of R.C. Chapter 2950, we cannot deny that severe obligations are imposed upon those classified as sex offenders. All sexual predators and most habitual sex offenders are expected, for the remainder of their lives, to register their residences and their employment with local sheriffs. Moreover, this information will be accessible to all. The stigma attached to sex offenders is significant, and the potential exists for ostracism and harassment, as the *Cook* court recognized. Id., 83 Ohio St.3d at 418, 700 N.E.2d 570. Therefore, I do not believe that we can continue to label these proceedings as civil in nature. These restraints on liberty are the consequences of

specific criminal convictions and should be recognized as part of the punishment that is imposed as a result of the offender's actions.' *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 45–46 (Lanzinger, J., concurring in part and dissenting in part)." *Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 45–47 (Lanzinger, J., dissenting).

*Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶14-¶15.

3. The VOD provisions are punitive.

**{¶24}** On March 9, 2020, the Twelfth District Court of Appeals ruled,

Given the many differences between the sex-offender registration statutes and the violent-offender enrollment statutes, we find that the violent-offender enrollment requirements are not so punitive that they impose a new burden in the constitutional sense, as contemplated in *Williams*. Rather, we find that the violent-offender enrollment requirements are more akin to the arson-offender registration requirements set forth in R.C. 2909.13, 2909.14, and 2909.15, which the First District found were remedial in nature. See *Caldwell,* 2014-Ohio-3566 at ¶ 33-35. Accordingly, as appellant had no expectation of finality with regard to any duties that may or may not have attached following his conviction for murder, he does not have a substantive right in this regard. *See* id. at ¶ 35; Cook, 83 Ohio St.3d at 414. The violent-offender enrollment statutes are remedial in nature, and the General Assembly could retroactively impose Sierah's Law without running afoul of Article II, Section 28 of the Ohio Constitution.

*State v. Hubbard,* 12th Dist. Butler No. CA2019-05-086, 2020-Ohio-856, ¶37.  In reaching this conclusion, the Court in *Hubbard* contended that,

> The Supreme Court's decision in *Williams* "is hard to reconcile with the court's previous pronouncements that the commission of a felony does not create a reasonable expectation of finality."  *Caldwell* at ¶ 24.  "Perhaps it is best understood by saying that, in *Williams,* the court simply found the scheme so punitive that it amounted to a violation of the Ohio Constitution, notwithstanding the court's prior jurisprudence on criminal acts and the expectation of finality."  Id.

> Following *Williams,* the Supreme Court "returned to analyzing retroactive legislation under the familiar framework of whether the retroactive application of a new law burdened a vested right or a reasonable expectation of finality."  Id. at ¶ 25

*Hubbard,* 12th Dist. Butler No. CA2019-05-086, 2020-Ohio-856, ¶28-¶29.

{¶25}  The Court in *Hubbard* relied in part on the Supreme Court's decision's in *State, ex. Rel. Matz v. Brown,* 37 Ohio St.3d 279,  525 N.E. 2d 805 (1988) and *State v. White,* 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534.

{¶26}  In *Matz,* the relator was convicted of a felony on August 25, 1978.  On March 18, 1983, the General Assembly amended R.C. 2743.60(E) to prohibit anyone convicted of a felony within the previous ten years from recovering under the Ohio Victims of Crime statute.  The relator was the victim of criminally injurious conduct on February 1, 1984. The Court of Claims of Ohio denied recovery to the relator based upon the 1983

amendment. The relator asserted that the amendment could not be applied to him without violating the Retroactivity Clause.

{¶27} In its analysis, the Supreme Court of Ohio reiterated the test that a statute is unconstitutional under the Retroactivity Clause if it is applied retroactively, and the statute "involves either impairing of a vested right or creating a new disability with respect to past transactions or considerations," i.e., is substantive. Id. at 281, 525 N.E.2d 805. The court then expanded the *Van Fossen* test for determining whether a statute is "substantive." It held that, with respect to the latter portion of the test, the "past transaction" must have created a "reasonable expectation of finality." Accordingly, the court concluded:

"From the foregoing it is clear that a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration, if it did not create a vested right, created at least a reasonable expectation of finality. The completion of a tax year is such a transaction; the commission of a felony is not.

* * *

Therefore, for purposes of analysis under Section 28, Article II, Ohio Constitution, we hold that a law that attaches a new disability to a past transaction or consideration is not a prohibited retroactive law unless the past transaction or consideration created at least a reasonable expectation of finality. Past felonious conduct is not such a transaction or consideration.

*Matz,* at 281, 282, 525 N.E.2d 805. The quoted portion of *Matz* has led to the conclusion that convicted felons never, under any circumstance, have a reasonable expectation of finality for their past deeds. However, *Matz* can be better understood as finding "one does not have a vested right or a reasonable expectation of finality with respect to "collateral consequences" of a prior felony conviction, that is to say, when one attempts to affirmatively seek a benefit to which he may otherwise be entitled but for his conviction." *State v. Crawford*, 11th Dist. Lake No. 97-L-245, 1998 WL 684185(Sept. 25, 1998), at *8. This distinction can be readily illustrated. Take for example a situation in which an offender committed a fifth degree felony offense and pled guilty to that offense. Now suppose that, prior to sentencing, a statute was enacted elevating the offense to a felony of the second degree. No one would seriously contend that because the offender had "no reasonable expectation of finality in his felony conviction" he could be given the increased punishment set forth in the newly enacted statute. Clearly, sentencing the offender under the new statue for a felony of the second degree would violate the E*x Post Facto C*lauses of the United States and Ohio Constitutions because it increases the punishment for a past crime. *See, Dorsey v. United States,* 567 U.S. 260, 275–87, 132 S.Ct. 2321, 2332–38, 183 L.Ed.2d 250 (2012) (*citing* Calder *v. Bull*, 3 Dall. 386, 390–391, 1 L.Ed. 648 (1798); *Collins v. Youngblood*, 497 U.S. 37, 41–44, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990))(Ex Post Facto Clause prohibits applying a new Act's higher penalties to pre-Act conduct, it does not prohibit applying lower penalties). In this example, the new statute could not be applied retroactively because it is clearly punitive, and would impose new or additional burdens, duties, obligations, or liabilities to a past transaction.

{¶28}  In *State v. White*, 132 Ohio St.3d 344, 2012–Ohio–2583, 972 N.E.2d 534, the Ohio Supreme Court examined the General Assembly's purpose in using the words "because of error that occurred in the sentencing phase of the trial."  The court had, in its 1987 decision in *State v. Penix*, 32 Ohio St.3d 369, 513 N.E.2d 744 (1987), held that because a death sentence could be imposed only upon the recommendation of the same jury that had found a capital offender guilty, a trial court could not impanel a new jury to resentence, nor could the trial court again sentence to death, an offender whose death sentence had been vacated for error during the penalty-phase of his trial.  Id. at 372–373, 513 N.E.2d 744.  The Court ruled that it was compelled to reach this conclusion because, "While the United States Supreme Court suggested in *Skipper v. South Carolina* (1986), 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1, that the imposition of a death sentence at a resentencing hearing may be permitted when it is specifically authorized by a state's death penalty statute, the Ohio Revised Code provides no such authorization."  32 Ohio St.3d 369,372, 513 N.E.2d 744.

{¶29}  In response to *Penix*, the General Assembly in 1996 enacted R.C. 2929.06(B), authorizing the trial court to impanel a new jury, conduct a new sentencing hearing, and reconsider all possible sentences, including death, when a death sentence has been vacated "because of error that occurred in the sentencing phase of the trial."

{¶30}  White urged a narrow reading of the statute, asserting that the trial court had no authority to resentence him to death under R.C. 2929.06(B), when his death sentence had been vacated not "because of error that occurred in the sentencing phase of the trial," but for error during jury selection.

{¶31} In *White,* the Ohio Supreme Court disagreed finding, "R.C. 2929.06(B) does not increase the punishment for aggravated murder. The death penalty for aggravated murder existed on January 19, 1996, the date of Trooper Gross's murder. White plainly faces no greater punishment as a result of R.C. 2929.06(B) than he faced on January 19, 1996." 132 Ohio St.3d 344, 2012–Ohio–2583, 972 N.E.2d 534, ¶33. The Court in *White* noted that White could not have a vested right to be resentenced until his original sentence had been vacated. Id. at ¶36. However, the state had enacted the new statute and made it retroactive before White's sentence had been vacated. Id. at 37. Thus, "upon the enactment of R.C. 2929.06(B), the *Penix* right was extinguished. When the Sixth Circuit vacated White's death penalty, there was no *Penix* right to vest. For the same reason, White could not plausibly contend that he relied on *Penix* when he committed the murder. We conclude that retroactive application of R.C. 2929.06(B) does not impair any vested or accrued right belonging to White." Id.

{¶32} Prior to the Supreme Court's decision in *Williams*, almost every appellate court that had upheld the new sexual offender classification, registration, and notification provisions of the Adam Walsh Act against constitutional challenge on retroactivity grounds relied strongly on *Matz* and concluded convicted sex offenders have no reasonable expectation of finality in either their past conduct or felony conviction. *State v. Crawford,* 11th Dist. Lake No. 97-L-245, 1998 WL 684185(Sept. 25, 1998). However, that all changed when the Ohio Supreme Court decided *Williams.*

{¶33} In *Williams,* the Ohio Supreme Court acknowledged,

> This court has consistently held that "R.C. Chapter 2950 is a *remedial* statute." *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824,

896 N.E.2d 110, ¶ 29.  We have also stated, "There is no absolute test to determine whether a retroactive statute is so punitive as to violate the constitutional prohibition against ex post facto laws; such a determination is a 'matter of degree.' " *State v. Cook* (1998), 83 Ohio St.3d 404, 418, 700 N.E.2d 570.  In *Cook*, we examined the guideposts listed in *Kennedy v. Mendoza–Martinez* (1963), 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644, for determining whether a statute is punitive and concluded that "R.C. Chapter 2950 serves the solely remedial purpose of protecting the public." *Cook* at 423, 700 N.E.2d 570.

After *Cook* was issued, R.C. Chapter 2950 was amended by S.B. 5. This court again concluded that despite the changes effected by S.B. 5, R.C. Chapter 2950 was *a remedial statute.  Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, at ¶ 43.  Some factors pertaining to the statutory scheme governing sex offenders, however, suggested that the statutory scheme was punitive.  First, the procedures for registration and classification of sex offenders were placed within Ohio's criminal code, R.C. Title 29.  Second, failure to comply with certain registration requirements subjected a sex offender to criminal prosecution.  R.C. 2950.99.

*Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶10 -¶11 (emphasis added).

{¶34} What distinguishes *Williams* from *Matz* and *White* is the Courts pronouncement in *Williams* that,

When we consider all the changes enacted by S.B. 10 in aggregate, we conclude that imposing the current registration requirements on a sex offender whose crime was committed prior to the enactment of S.B. 10 is *punitive.*

*Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶21 (emphasis added). The key distinction in *Williams* is, "If the registration requirements of S.B. 10 are imposed on Williams, the General Assembly has *imposed new or additional burdens, duties, obligations, or liabilities as to a past transaction."* Id. at ¶22 (emphasis added). Thus, the Supreme Court's decision in *Williams* is *not* hard to reconcile with the court's previous pronouncements that the commission of a felony does not create a reasonable expectation of finality. *See, State v. Hubbard,* 12th Dist. Butler No CA2019-05-086, 2020-Ohio-856, ¶28. In *Williams,* the Court found that the new registration statute was *punitive* and *imposed new or additional burdens, duties, obligations, or liabilities as to a past transaction.* In both *Matz* and *White*, the Court found that the statutes under consideration were *not* punitive and/or did *not* impose new or additional burdens, duties, obligations, or liabilities as to a past transaction.

{¶35} In the case at bar, at the time he committed his offenses and at the time that he pled guilty, Jarvis had no duty to register with the VOD. Now he is required to register with the VOD in person each year for a minimum of ten years. *See, e.g. Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶18. An offender must also submit to a new photograph taken by the sheriff. R.C. 2903.43(D)(1). Under the VOD, *every person serving a sentence of confinement on March 20, 2019 for one of the eligible offenses must register, even if the crime was committed years before the current*

*enactment.* In spite of the fact that an offender may rebut the presumption that he be required to enroll in the database, the trial court can still require the offender to register. R.C. 2903.42(A)(4)(a). The name and address of any place where the offender is employed and of any school or institution of higher education that the offender is attending; and the identification license plate number of each vehicle owned or operated by the offender or registered in the offender's name, the vehicle identification number of each vehicle, and a description of each vehicle must be provide. *See, e.g. Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶20. With the exception of the offender's Social Security number, driver's license number, or state identification number, any statements, information, photographs, fingerprints, or materials provided by an offender who has VOD duties that are in the sheriff's possession are public records open to public inspection under Ohio's Public Records Law. R.C. 2903.43(F)(3). *See, e.g. Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶14; ¶15 (*quoting State v. Ferguson,* 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110. Lanzinger, J., dissenting). Additionally, if the offender's most recent enrollment or re-enrollment was in a different county, the offender must provide written notice of the change of address to the sheriff or designee where the offender previously resided. R.C. 2903.43(D)(1). An individual must notify the sheriff within three business days of any change of home, work or school address. R.C. 2903.43(E). Under certain circumstances, the 10-year enrollment period may be extended indefinitely by the trial court. R.C. 2903.43(D)(2).[1] The registration requirements apply without regard to the future dangerousness of the offender. *See, e.g. Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108,

---

[1] The trial court must extend the registration period if the offender commits any violation of a supervised release condition, is convicted of a violent misdemeanor, or is convicted of any felony.

¶20.  The act prohibits an offender who has VOD duties from recklessly failing to enroll, re-enroll, or notify the sheriff or sheriff's designee of a change of address during the ten-year enrollment period or extended enrollment period.  A violation of the prohibition is a fifth degree felony.

{¶36}  When considered in the aggregate, we conclude that  imposing the  VOD, R.C. 2903.41, et seq. requirements upon defendants who committed offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws.

**CONCLUSION.**

{¶37}  If the registration requirements of the VOD are imposed on Jarvis, the General Assembly has imposed new or additional burdens, duties, obligations, or liabilities as to a past transaction.  We conclude that the VOD, R.C. 2903.41, et seq.  as applied to Jarvis and any other offender who committed an offense prior to March 20, 2019, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from enacting retroactive laws. *Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶14.

{¶38} The judgment of the Muskingum County Court of Common Pleas is reversed and the cause is remanded for resentencing under the law in effect at the time Jarvis committed the offense.

By Gwin, P.J.,

Wise, John, J., and

Baldwin, J., concur