[Cite as *State v. Jackson*, 2020-Ohio-4115.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-393 |
| v. | : | (C.P.C. No. 88CR-3371) |
| Edward Jackson, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 18, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

**On brief:** *Edward Jackson*, pro se.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Edward Jackson, appeals the decision of the Franklin County Court of Common Pleas denying his motion for de novo sentencing hearing and appointment of counsel. He asserts a single assignment of error:

> The Defendant-Appellant was Deprived of his State and Federal Constitutional Rights When the State via Legislative Enactment, Added a Collateral Sanction 30 Years After the Original Sentence Was Imposed and Was Not the Law at the Time of Imposition.

{¶ 2} In 1989, a jury found Jackson guilty of three counts of kidnapping with specifications, two counts of rape with specifications, one count of attempted rape with specifications, one count of gross sexual imposition with specifications, and one count of

having weapon under disability with specifications. Jackson was sentenced, and on appeal this court affirmed the findings of guilt but remanded for the correction of sentencing errors. *See State v. Jackson*, 10th Dist. No. 89AP-1015 (Aug. 23, 1990). On remand Jackson was sentenced to an aggregate indefinite prison term of 51 to 105 years, and this court affirmed that sentence on appeal. *See State v. Jackson*, 10th Dist. No. 97APA12-1660 (June 30, 1998). During his incarceration, Jackson has filed numerous post-trial pleadings challenging his convictions and sentence. *See, e.g.*, *State v. Jackson*, 10th Dist. No. 01AP-427 (Sept. 28, 2001). He has not been granted parole and remains incarcerated, and his next parole hearing is currently scheduled for July 2022.

{¶ 3} Jackson's current challenge involves the requirement of violent-offender registration required by Am.Sub.S.B. No. 231 (hereinafter Senate Bill 231), "Sierah's Law." *See* R.C. 2903.41 through 2903.44. Jackson believes he is entitled to a de novo sentencing hearing because of that requirement. In his motion, Jackson asserted he was notified by prison kiosk in April 2019 that, pursuant to the new law, following his release he would be required to enroll in the violent offender database and maintain that registration for ten years. *See, e.g.*, R.C. 2903.43. Jackson argued the registration requirements annulled, reversed, or modified a judgment already rendered by changing his sentence, that R.C. 2903.43 was an ex post facto law, it was unconstitutionally retroactive, and it violated his right to due process. In response, plaintiff-appellee, State of Ohio, argued that his motion "is a non-sequitur as to the [violent offender database] issues" and was not ripe for decision because Jackson was not yet subject to registration. The state also argues that Jackson's motion was not a "motion to rebut" the new registration requirement (as authorized under R.C. 2903.42(A)(2)(b)) since it did and could not assert that Jackson was not the "principal offender," as the evidence presented at his trial was that he was the sole perpetrator of the

crimes for which he was convicted. *See generally Jackson*, 10th Dist. No. 89AP-1015 (reciting evidence at trial). The trial court denied Jackson's motion on May 20, 2019, and this timely appeal followed.

{¶ 4} Senate Bill 231 creates a new statewide violent offender database and requires a qualifying offender to register for that database in the county where the offender resides for ten years following release from confinement. Generally, such offenders must appear in person at the county sheriff's office within ten days following release from incarceration to register, must re-register annually, and must provide notice of change of address to the sheriff within three days. The information obtained is kept in a non-public database by the Bureau of Criminal Investigation for the use of law enforcement, but the information obtained is kept by the county sheriff and some of that information is designated as a public record and must be kept open to inspection at the sheriff's office. R.C. 2903.43(F)(3)(a). Registered offenders who fear for their safety may file a motion with the county court of common pleas to have the data made non-public, R.C. 2903.43(F)(3)(c), and an offender who was not the principle offender in committing the offense may be relieved from the duty of registration following a hearing and the grant of a motion for relief from registration by the county common pleas court. R.C. 2903.42(A)(4). Jackson contends the legislature's action in requiring him to register retroactively resentenced him in violation of the retroactive law prohibition in the Ohio Constitution and the limitation of ex post facto laws in the United States Constitution.

{¶ 5} Analysis of the ex post facto question is primarily guided by the United States Supreme Court's decision in *Smith v. Doe*, 538 U.S. 84 (2003). In *Smith*, the court analyzed the application of Alaska's "Megan's Law" statute to sex offenders whose offenses pre-dated the effective date of the law, and concluded that the registration provisions of the law were

"nonpunitive," and that therefore "retroactive application [of those provisions] does not violate the *Ex Post Facto* Clause." *Id.* at 106. These conclusions resulted from the court's determinations that registration of sex offenders under Alaska's law was rationally related to the legitimate non-punitive purpose of public safety, that the decision to regulate "with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment," *id* at 104, that the Alaska law's registration requirements—15 years annually for single-offense or non-aggravated offense offenders and lifetime quarterly for aggravated or multiple-offense offenders, *see id.* at 90—were not excessive in duration given its public-safety justification, and that the decision "to make its registry system available and easily accessible" by posting the registration on the internet "was not so excessive a regulatory requirement as to become a punishment" because "the notification system is a passive one: An individual must seek access to the information." *Id.* at 104-05. *See also State v. Cook*, 83 Ohio St.3d 404, 423 (1998) (holding that "registration and notification provisions of [the 1997 Ohio sex offender registration law] do not violate the *Ex Post Facto* Clause because its provisions serve the remedial purpose of protecting the public") and *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824 (holding over dissent that 2003 modification of sex offender registration law remained a "civil, remedial statute" and "cannot be deemed unconstitutional on ex post facto grounds").

{¶ 6} By contrast, Jackson's challenge to retroactive application of S.B. 231 is a matter of state constitutional law. In *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, the Supreme Court of Ohio analyzed the 2007 amendments to Ohio's sex offender registration law under Ohio Constitution, Article II, Section 28, the prohibition against retroactive lawmaking. The court noted that under the amendments, known as S.B. No. 10,

"[T]he statutory scheme has changed dramatically" and contained far more onerous requirements than Ohio's previous registration law, under which it had previously described registration as "an inconvenience 'comparable to renewing a driver's license.' " *Id.* at ¶ 16, quoting *Cook* at 418. The court observed that under the new law:

> [s]ex offenders are no longer allowed to challenge their classifications as sex offenders because classification is automatic depending on the offense. Judges no longer review the sex-offender classification. In general, sex offenders are required to register more often and for a longer period of time. They are required to register in person and in several different places. * * * Furthermore, all the registration requirements apply without regard to the future dangerousness of the sex offender. Instead, registration requirements and other requirements are based solely on the fact of a conviction.

*William* at ¶ 20. The court therefore held that "[w]hen we consider all the changes enacted by S.B. 10 in aggregate, we conclude that imposing the current registration requirements on a sex offender whose crime was committed prior to the enactment of S.B. 10 is punitive * * * [and] violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws." *Id.* at ¶ 21.

{¶ 7} Notwithstanding the contrasting conclusions between *Smith* and *Williams*, there are substantial commonalities between the ex post facto analysis and the retroactive laws analysis, and both questions frequently turn on whether the statute in question is criminal and punitive rather than civil and remedial.

{¶ 8} Here, the registration requirements and limited reach of the violent offender database are much more akin to the annual, ten-year "de minimis administrative" registration that was approved in *Cook* than the additional punishment rejected in *Williams*, and as such Jackson's arguments are of doubtful merit. *Compare* R.C. 2903.43 with *Cook* at 414-23 (analyzing provisions of former R.C. Chapter 2950 and concluding that

application of provisions did not violate the Ex Post Facto Clause). But we also believe it is unnecessary to fully analyze his constitutional claims, as we conclude that the state's suggestion that this case is not ripe for our decision is correct. In determining whether an issue is ripe for review, the court weighs three factors: "(1) whether the alleged future harm is likely to occur; (2) whether delayed review is likely to cause hardship to the parties; and (3) whether the factual record is developed sufficiently to allow a fair resolution." *Baker v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-987, 2012-Ohio-1921, ¶ 10. And ultimately, "if a claim rests upon future events that may not occur at all or may not occur as anticipated, then the claim is not ripe for review." *Id.* Given that Jackson remains incarcerated with no expected release date, given the nature of and length of sentence for his offenses, and that parole conditions and sex-offender registration will already be required upon his release, we believe the state has shown that it is more than possible that Jackson's registration duties under the statute may be either duplicative of or subsumed under his other duties upon release, if in fact he is released prior to his maximum sentence date.

{¶ 9}   But perhaps most importantly to our review, even if registration as a violent offender could constitute an ex post facto criminal law or retroactive punishment as applied to Jackson, the remedy he requests—de novo sentencing—is unavailable. Rather, the appropriate remedy for an unconstitutional post-sentence registration order in such cases is to simply reinstate the original order and sentence. *See, e.g.*, *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424 at ¶ 66 (holding that new sex-offender registration requirements "may not be applied to offenders previously adjudicated by judges under Megan's Law, and the classifications and community-notification and registration orders imposed previously by judges are reinstated"). Accordingly, even if Jackson were entitled

to some relief based on his arguments, that relief would not include a de novo sentencing, and the trial court did not err by denying his motion requesting a de novo sentencing hearing.

{¶ 10} For these reasons, Jackson's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas denying his motion for de novo sentencing hearing is affirmed.

*Judgment affirmed.*

KLATT, J, concurs.
LUPER SCHUSTER, J., concurs separately.

————————————

LUPER SCHUSTER, J., concurring separately.

{¶ 11} While I concur in the judgment of the majority overruling Edward Jackson's sole assignment of error, I write separately because I would reach that result for different reasons.

{¶ 12} The majority finds that Jackson's motion did not present a justiciable issue because the matter is not ripe.  Indeed, "[i]n order to be justiciable, a controversy must be ripe for review."  *Keller v. Columbus*, 100 Ohio St.3d 192, 2003-Ohio-5599, ¶ 26.  In my view, however, this case presents a ripe issue.  Ripeness is a question of timing, and the "ripeness doctrine seeks to prevent courts from engaging in premature adjudication." *Johnson v. Ferguson-Ramos*, 10th Dist. No. 04AP-1180, 2005-Ohio-3280, ¶ 22, citing *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 89 (1998).  "A claim is not ripe for our consideration if it rests on contingent future events that may not occur as anticipated or may never occur at all."  *State v. Loving*, 180 Ohio App.3d 424, 2009-Ohio-15, ¶ 4 (10th Dist.), citing *Texas v. United States*, 523 U.S. 296, 300 (1998).

{¶ 13} Pursuant to "Sierah's Law," which became effective March 20, 2019 and established a violent offender database, prison officials notified Jackson that he is classified a "violent offender" under R.C. 2903.41(A)(2). R.C. 2903.42(A)(1)(b). This classification creates a rebuttable presumption that Jackson, as a violent offender, will be required to register annually for ten years with the sheriff of the county in which he resides. R.C. 2903.42; R.C. 2903.43. Even though Jackson remains in prison, and thus his obligation to enroll in the violent offender database is not yet implicated, the constitutionality of his classification as a violent offender under R.C. 2903.41, and the pending obligations associated with that classification, is a ripe issue. *See State v. Jarvis*, 5th Dist. No. CT 2019-0029, 2020-Ohio-1127 (reviewing constitutionality of the retroactive application of Sierah's Law to a defendant informed of his reporting obligations but not yet released from prison); *State v. Hubbard*, 12th Dist. No. CA2019-05-086, 2020-Ohio-856 (same).

{¶ 14} Despite being ripe, the trial court lacked jurisdiction to consider Jackson's constitutional challenge as submitted. "Once a final judgment has been issued pursuant to Crim.R. 32, the trial court's jurisdiction ends." *State v. Gilbert*, 143 Ohio St.3d 150, 2014-Ohio-4562, ¶ 9. "Absent statutory authority, a trial court is generally not empowered to modify a criminal sentence by reconsidering its own final judgment." *State v. Carlisle*, 131 Ohio St.3d 127, 2011-Ohio-6553, ¶ 1. However, a trial court has authority to reconsider its own valid, final judgment in a criminal case when a void sentence has been imposed and when the judgment contains a clerical error. *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, ¶ 19, citing Crim.R. 36. None of these circumstances authorizing continuing jurisdiction after final judgment apply here.

{¶ 15} Although Jackson generally moved for a "de novo sentencing hearing" on April 25, 2019, in substance he did not request the trial court revisit or modify its final judgment based on it being void or containing a clerical error. And because Jackson did not seek to render any aspect of the trial court's judgment void, it would be improper to classify Jackson's motion as a petition for postconviction relief. *See* R.C. 2953.21(A)(1) ("Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed the sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence."). Instead of requesting the trial court modify its final judgment, Jackson sought declaratory relief from the recently enacted statutory scheme he argues has been unconstitutionally applied to him.

{¶ 16} Under Sierah's Law, a trial court that previously sentenced a violent offender has limited continuing jurisdiction over that offender's criminal case after final judgment has been entered. Pursuant to R.C. 2903.42(A)(2), a person classified as a violent offender may file a "motion" with "the court that is sentencing the offender" or "the court that sentenced the offender." For a defendant classified as a violent offender during his time in prison, he must file the motion before he is released from prison. *Id.* "The motion shall assert that the offender was not the principal offender in the commission of that offense and request that the court not require the offender to enroll in the violent offender database and not have all VOD duties with respect to that offense." R.C. 2903.42(A)(2)(b). Thus, a violent offender may only rebut the enrollment presumption by proving that he was not the principal offender in the commission of the offense that classifies the person a violent

offender.  R.C. 2903.42(A)(4).  Because Jackson's motion did not assert he was not the principal offender, the trial court lacked a statutory basis for exercising continuing jurisdiction over the case.  Consequently, I find the trial court properly denied Jackson's April 25, 2019 motion, and I decline to review the constitutionality of Sierah's Law as applied to Jackson.

{¶ 17} For these reasons, I concur separately.