[Cite as *State v. Garst*, 2021-Ohio-1516.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-51 |
| | : | |
| v. | : | Trial Court Case No. 2009-CR-54 |
| | : | |
| MATTHEW W. GARST | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 30th day of April, 2021.

. . . . . . . . . . .

IAN RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

CHARLES W. SLICER, III, Atty. Reg. No. 0059927, 426 Patterson Road, Dayton, Ohio 45419
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Matthew W. Garst appeals from the trial court's denial of his post-sentence motion to withdraw his guilty plea. He claims that new obligations imposed on him by Sierah's Law, which was enacted approximately nine years after his conviction, created a manifest injustice. For the following reasons, we conclude that the trial court did not abuse its discretion in denying the motion. Accordingly, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

**{¶ 2}** In January 2009, Garst was indicted on one count of aggravated murder, one count of murder, two counts of felonious assault, and two counts of aggravated robbery. Approximately 15 months later, in February 2010, he pled guilty to murder, in violation of R.C. 2903.02(A), and the additional five counts were dismissed. The trial court accepted the guilty plea and imposed an indefinite prison term of 15 years to life.

**{¶ 3}** Garst did not timely appeal his conviction. However, in June 2012, he sought leave to file a delayed appeal. (Clark App. No. 12-CA-43.) We denied the motion and dismissed the appeal. *See* July 9, 2012 Decision and Final Judgment Entry. In December 2012, Garst filed a motion to correct his sentence, and he filed a petition for post-conviction relief in December 2013; neither is relevant to this appeal.

**{¶ 4}** Approximately nine years after Garst entered his plea, the 132nd General Assembly enacted S.B. 231, known as Sierah's Law, effective March 20, 2019. Sierah's Law established a statewide Violent Offender Database along with a legal presumption that offenders convicted of certain violent crimes must enroll therein for a period of ten years following their release from prison. *See* R.C. 2903.41 through R.C. 2903.43; *State v. Irvin,* 2020-Ohio-4847, 160 N.E.3d 388, ¶ 30 (2d Dist.), *appeal allowed,* 161 Ohio St.3d

1416, 2021-Ohio-120, 161 N.E.3d 711. Of relevance here, R.C. 2903.41(A) defines a "violent offender" to include, among others, any person convicted of murder in violation of R.C. 2903.02.

{¶ 5} On October 9, 2019, Garst, pro se, filed a motion to withdraw his guilty plea based on the new Violent Offender Database requirements under Sierah's Law. Garst stated that he was not notified about the Violent Offender Database requirements at his plea hearing and they were not part of his plea agreement. He thus claimed that his plea agreement was void and his plea was not made knowingly, intelligently, and voluntarily. Garst alleged that he would have opted for a jury trial had he been aware that he would be subject to the requirements of Sierah's Law. Garst claimed that a manifest injustice was present, because he was deprived of his rights to "Due Process, Equal Law, Fundamental Fairness and Effective Assistance of Counsel." He further noted that the duty to enroll for ten years could be used to impeach his credibility and carries a societal stigma that could lead to the denial of housing, employment, and other opportunities.

{¶ 6} The trial court did not promptly rule on Garst's motion to withdraw his plea, and Garst renewed his motion on February 3, 2020.

{¶ 7} At the request of the trial court, the State filed a response to Garst's motions. Citing *State v. Hubbard*, 2020-Ohio-856, 146 N.E.3d 593, ¶ 32 (12th Dist.), the State asserted that the retroactive application of Sierah's Law did not violate Garst's constitutional rights and, thus, did not create a manifest injustice. In his reply memorandum, Garst, by then represented by counsel, relied upon *State v. Jarvis*, 2020-Ohio-1127, 152 N.E.3d 1225 (5th Dist.), which held that Sierah's Law was unconstitutionally retroactive. In a supplemental reply brief, Garst further argued that he

had not had a sufficient understanding of the consequences of his plea, that he had been deprived of meaningful representation during plea negotiations, and that the application of Sierah's Law breached the parties' plea agreement.

{¶ 8} On September 4, 2020, the trial court denied Garst's motions to withdraw his plea. The court reasoned, in relevant part:

> Courts have found that the registration requirement of this statute [Sierah's Law], like other offender registration statutes, does not increase the punishment imposed on the Defendant for the commission of his crime, but is a collateral consequence of his criminal act. It is remedial rather than punitive. The Defendant's argument that his duty to enroll as the violent offender "may be used to impeach the Defendant's credibility and certainly carries the societal stigma for a period of (10) years, which will potentially lead to Defendant being denied employment, housing and other opportunities" does not state a valid reason for finding a manifest injustice has occurred. The Court agrees with the State's response objecting to the Defendant's motion, that the societal stigma which the Defendant may encounter will be the result of the offense committed by the Defendant not the registration requirement.

(Footnotes omitted.)

{¶ 9} Garst appeals from the trial court's judgment, raising one assignment of error.

## II. Post-Sentence Motion to Withdraw Plea

{¶ 10} Garst's sole assignment of error claims that the trial court erred in denying his motion to withdraw his plea.

{¶ 11} Crim.R. 32.1 states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." "A manifest injustice is a clear or openly unjust act; an extraordinary and fundamental flaw in the plea proceeding." *State v. Hawke*, 2d Dist. Greene No. 2019-CA-24, 2020-Ohio-511, ¶ 13, quoting *State v. Yapp*, 2015-Ohio-1654, 32 N.E.3d 996 (8th Dist.), ¶ 8. "The manifest-injustice standard demands a showing of extraordinary circumstances, and the defendant bears the burden of proving the existence of a manifest injustice." *State v. Turner*, 171 Ohio App.3d 82, 2007-Ohio-1346, 869 N.E.2d 708, ¶ 20 (2d Dist.).

{¶ 12} A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and a trial court's decision on a motion to withdraw a plea will not be reversed absent an abuse of that discretion. *State v. Johnson*, 2d Dist. Montgomery No. 27372, 2017-Ohio-9227, ¶ 7. "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990); *Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 7.

{¶ 13} On appeal, Garst primarily focuses on whether Sierah's Law violates the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution. He further argues that the parties had no "meeting of the mind" when reaching their plea agreement, as

Garst did not expect to be facing the additional burdens imposed by Sierah's Law when he entered his plea. He also notes that he was not advised of the obligations imposed by Sierah's Law at the time of his plea.

{¶ 14} We begin with Garst's claim that the application of Sierah's Law constitutes a breach of his plea agreement. "Plea agreements are contractual in nature and are subject to contract law principles." *State v. Heard*, 2d Dist. Montgomery No. 27454, 2018-Ohio-314, ¶ 15, citing *Smith v. Ohio Adult Parole Auth.*, 2d Dist. Champaign No. 2009-CA-22, 2010-Ohio-1131, ¶ 36 and *State v. Dillon*, 2d Dist. Darke No. 05-CA-1674, 2006-Ohio-4931, ¶ 21. The remedies for a breach of a plea agreement include the traditional contractual remedies of rescission and specific performance. *Id.*; *State v. Johnson*, 2d Dist. Greene No. 06-CA-43, 2007-Ohio-1743, ¶ 20, citing *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

{¶ 15} Garst repeatedly states that the trial court imposed an "agreed sentence" and, thus, the application of the Violent Offender Database requirements violates the plea agreement. The record does not contain a transcript of the plea hearing, and nothing in the plea agreement suggests that Garst's sentence was an agreed sentence.[1] Rather, the plea agreement reflects that Garst would plead guilty to murder in exchange for which the remaining counts would be dismissed. Once Garst entered a guilty plea to murder in violation of R.C. 2903.02(A), the trial court was required to impose an indefinite prison term of 15 years to life, pursuant to R.C. 2929.02(B)(1), which Garst received. Indeed, the portion of the plea agreement entitled "Judgment Entry of Guilt" included a

---

[1] The trial court's docket describes the plea agreement as "Plea of Guilty–Deft Waived Rights–Deft Pleas [sic] Guilty–*Agreed Sentence*." (Emphasis added.) However, the clerk's office's description of the plea agreement has no legal import.

handwritten notation by the trial court that the sentencing hearing was scheduled on "2/26/10 *mandatory* sentence." (Emphasis added.) The record does not support Garst's claim that the retroactive application of Sierah's Law to him constituted a breach of the parties' plea agreement.

{¶ 16} The primary question before us is whether retroactive application of Sierah's Law created a manifest injustice that warranted the post-sentence withdrawal of Garst's guilty plea.

{¶ 17} The Retroactivity Clause of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments. *Bielat v. Bielat*, 87 Ohio St.3d 350, 352, 721 N.E.2d 28 (2000). "The retroactivity clause nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].' " *Id.* at 352-353, quoting *Miller v. Hixson*, 64 Ohio St. 39, 51, 59 N.E. 749 (1901). However, not all retroactive laws are forbidden. *Id.* at 353; *In re Forfeiture of Property of Astin*, 2018-Ohio-1723, 111 N.E.3d 894, ¶ 14 (2d Dist.).

{¶ 18} The Ohio Supreme Court has adopted a two-part test for determining whether a statute is unconstitutionally retroactive. The first step asks whether the General Assembly expressly intended the statute to apply retroactively. *Bielat* at 353. Unless expressly made retroactive, a statute has prospective application. R.C. 1.48; *Irvin*, 2020-Ohio-4847, 160 N.E.3d 388, at ¶ 25. *See also Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 105, 522 N.E.2d 489 (1988). If the legislature expressly intended the statute to apply retroactively, the second step is to determine whether the statute is substantive, as opposed to merely remedial. *Bielat* at 353. A statute that both

applies retroactively and is substantive violates the Retroactivity Clause.  *Id.*

{¶ 19} By its express language, the violent offender statutes apply to individuals, such as Garst, who were convicted of "violent offenses" prior to the effective date of the statute.  We recently concluded, as have other Ohio appellate districts, that the General Assembly expressly intended for the Sierah's Law to apply retroactively.  *State v. Williams*, 2d Dist. Montgomery No. 28648, 2021-Ohio-1340, ¶ 141; s*ee also, e.g., Jarvis*, 2020-Ohio-1127, 152 N.E.3d 1225, at ¶ 19-20; *State v. Morgan*, 2020-Ohio-3955, 156 N.E.3d 989, ¶ 19-21 (9th Dist.).

{¶ 20} As recognized by the parties, Ohio appellate districts have reached different conclusions as to whether retroactive application of Sierah's Law is unconstitutional. The Ohio Supreme Court has found that a conflict exists between judgments of the Fifth and Twelfth Districts and has accepted this issue for appeal. *See* 7/01/2020 Case Announcements, 2020-Ohio-3473 (finding *Hubbard*, 2020-Ohio-856, 146 N.E.3d 594 (12th Dist.) to be in conflict with *Jarvis*, 2020-Ohio-1127, 152 N.E.3d 1225 (5th Dist.)).

{¶ 21} In *Williams*, we concluded that Sierah's Law does not violate Article II, Section 28 of the Ohio Constitution.  *Williams* at ¶ 142-144.  We initially noted that the First, Sixth, Ninth, and Twelfth Districts have concluded that the requirements of Sierah's Law are remedial in nature and, therefore, constitutional.  *Id.* at ¶ 142, citing *State v. Rike*, 1st Dist. Hamilton No. C-190401, 2020-Ohio-4690; *State v. Lamb*, 6th Dist. Lucas No. L-19-1177, 2021-Ohio-87; *Morgan,* 2020-Ohio-3955, 156 N.E.3d 989; and *Hubbard*, 2020-Ohio-856, 146 N.E.3d 593.

{¶ 22} We observed that, "[i]n reaching this conclusion, other appellate districts have compared the violent offender database statutes with the provisions of sex offender

registration statutes, R.C. Chapter 2950, and the arson-offender registration requirements set forth in R.C. 2909.13, R.C. 2909.14, and R.C. 2909.15." *Williams* at ¶ 143. Upon consideration of those statutes, we similarly concluded that Violent Offender Database requirements are "akin to the registration requirements under the arson-offender registration statutes, which have been found to be remedial in nature, and are not as onerous as those under the Adam Walsh Act, which have been found to be punitive." *Id.*, citing *Rike*, 1st Dist. Hamilton No. C-190401, 2020-Ohio-4690; *Lamb*, 6th Dist. Lucas No. L-19-1177, 2021-Ohio-87; *Morgan*; *Hubbard; see also State v. Jackson*, 10th Dist. Franklin No. 19AP-393, 2020-Ohio-4115, ¶ 8 (stating that the violent offender database registration requirements were "much more akin" to Megan's Law than to the Adam Walsh Act, but concluding that the constitutional issue was not ripe for review). We noted that we had previously found, in the context of a challenge to the Violent Offender Database requirements as violative of the prohibition against cruel and unusual punishment, that the requirements for violent offenders are less onerous than those for sex offenders. *Williams* at ¶ 144, citing *Irvin*, 2020-Ohio-4847, 160 N.E.3d 388, at ¶ 33.

{¶ 23} As stated in *Hubbard*, "[t]he violent-offender enrollment statutes do not increase the punishment for the specified violent offenses of aggravated murder, murder, voluntary manslaughter, kidnapping, or abduction as a second-degree felony. Rather, classification as a violent offender and enrollment into the violent offender database 'is a collateral consequence of the offender's criminal acts rather than a form of punishment per se.' " *Hubbard* at ¶ 32, quoting *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110. ¶ 34. We agree with *Hubbard*'s assessment, and again conclude that Sierah's Law is not unconstitutionally retroactive. Because we conclude that Sierah's

Law is a remedial statute, the requirements of which are collateral consequences of Garst's murder conviction, the retroactive application of Sierah's Law to Garst did not create a manifest injustice.

**{¶ 24}** Moreover, the fact that Garst was not informed of the obligations imposed by Sierah's Law at the time of his plea did not render his plea other than knowing, intelligent, and voluntary. Putting aside that the trial court could not have informed Garst of obligations that did not yet exist, a trial court generally is not obligated to inform a defendant of the collateral consequences of a guilty plea prior to accepting the plea. *See, e.g., State v. Stape*, 2d Dist. Montgomery No. 22586, 2009-Ohio-420, ¶ 19 (because the obligations under Megan's Law were collateral consequences and not punitive, the trial court was not obligated to inform the defendant of those obligations prior to accepting a guilty plea).

**{¶ 25}** The trial court did not abuse its discretion in denying Garst's post-sentence motion to withdraw his plea. Accordingly, Garst's assignment of error is overruled.

### III. Conclusion

**{¶ 26}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.


Copies sent to:

Ian Richardson
Charles W. Slicer, III
Hon. Richard J. O'Neill