[Cite as *State v. Davis*, 2011-Ohio-5630.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25399 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| TRAVONTE JAYHSON DAVIS | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 09 10 3055 |

DECISION AND JOURNAL ENTRY

Dated: November 2, 2011

WHITMORE, Judge.

{¶1} Defendant-Appellant, Travonte Davis, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} In the early morning hours of September 23, 2009, Airman Vincent Taylor and his step-brother, Preston Harris, decided to visit a local nightclub to celebrate Airman Taylor's birthday. Airman Taylor had recently returned from a tour of duty in Iraq and was on leave from his Air Force base in Georgia. He drove Harris to Whispers Nightclub in Akron, and the two remained there for a short time before exiting the club and chatting on the sidewalk. In the midst of their conversation, two males approached in a vehicle and asked about the nightclub crowd. The men then parked their vehicle and walked back to where Airman Taylor and Harris were standing. Airman Taylor and Harris both spoke with the men and had the opportunity to observe them for several minutes, beginning from the time they first approached in their vehicle.

{¶3} Not long after the two men approached, Airman Taylor and Harris returned to Airman Taylor's vehicle. The two men remained standing on the sidewalk while Airman Taylor entered his vehicle on the driver's side and Harris on the passenger's side. One of the men from the sidewalk then walked over to the driver's side of the vehicle and asked Airman Taylor for money through his partially open window. Sensing danger, Harris told his step-brother to roll up the window and drive away. Airman Taylor turned his head to look at Harris and, when he turned back, saw that the man standing outside had stuck the barrel of his gun through the partially open window. Airman Taylor jerked back reflexively, but the gun fired. The bullet struck him just below the eye. While Airman Taylor ultimately survived the incident, he lost his eye and suffered permanent hearing loss and nerve damage as a result. The man who shot Airman Taylor fled the scene while Harris drove his step-brother to the hospital.

{¶4} Harris was unable to help create a sketch of Airman Taylor's assailant at the hospital, but informed the police that he would be able to identify the man if he saw a picture of him. He also gave a description of the assailant's clothing, which was jeans, a black hooded sweatshirt, and a black skull cap. The next day, Harris received an anonymous phone call during which the caller identified his step-brother's shooter as a man named "VonVon." Harris relayed the information to the police, who searched for the moniker in their database and created a photo array. The police presented the photo array to Harris the following day, two days after the shooting, and Harris identified Davis as his step-brother's shooter. The police were not able to apprehend Davis until October 5, 2009, on which day they chased him on foot and eventually found him hiding behind a bush. Airman Taylor saw Davis on the news and recognized him as the shooter.

{¶5} On October 16, 2009, a grand jury indicted Davis on the following counts: (1) attempted murder, in violation of R.C. 2903.02(A)/(B)/R.C. 2923.02; (2) aggravated robbery, in violation of R.C. 2911.01(A)(1); (3) aggravated robbery, in violation of R.C. 2911.01(A)(1)/(3); and (4) felonious assault, in violation of R.C. 2903.11(A)(1)/(2). All of the foregoing counts also contained attendant firearm specifications, in violation of R.C. 2941.145. The State later dismissed both the attempted murder count and first count of aggravated robbery.

{¶6} On February 12, 2010, Davis filed a motion to suppress, seeking to exclude evidence of the out-of-court identification that Harris made on the basis that the photo array the police compiled was impermissibly suggestive and unreliable. The court held a suppression hearing on March 29, 2010. Subsequently, the court denied the motion to suppress.

{¶7} A jury trial began on April 14, 2010, at the conclusion of which the jury found Davis guilty of aggravated robbery, felonious assault, and the firearm specifications linked to those offenses. The trial court sentenced Davis to a total of eighteen years in prison.

{¶8} Davis now appeals from his convictions and raises four assignments of error for our review. For ease of analysis, we rearrange the assignments of error.

II

Assignment of Error Number Two

"THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY ADMITTING EVIDENCE OF AN UNRELIABLE IDENTIFICATION BASED UPON AN UNNECESSARILY SUGGESTIVE METHOD OF PRESENTING A PHOTO ARRAY THEREBY DEPRIVING THE APPELLANT OF DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE 5TH, 6TH, AND 14TH AMENDMENT UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶9} In his second assignment of error, Davis argues that the trial court erred by denying his motion to suppress evidence stemming from the pre-trial identification Harris made

two days after the shooting. Specifically, Davis argues that the identification was impermissibly suggestive and unreliable. We disagree.

{¶10} The Ohio Supreme Court has held that:

"Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8.

Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, at ¶6, citing *Burnside* at ¶8.

{¶11} "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State v. Villa*, 9th Dist. No. 05CA008773, 2006-Ohio-4529, at ¶11, quoting *Simmons v. United States* (1968), 390 U.S. 377, 384. Furthermore, "even if an identification procedure is suggestive, it is admissible so long as the challenged identification itself is reliable." *State v. Reives-Bey*, 9th Dist. No. 25138, 2011-Ohio-1778, at ¶13, citing *Manson v. Brathwaite* (1977), 432 U.S. 98.

"In order to determine the reliability of the identification, we must consider (1) the witness's opportunity to view the defendant at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the

identification." (Citations omitted.) *State v. Davis* (1996), 76 Ohio St.3d 107, 113.

The trial court here determined that there was nothing suggestive about the photo array itself and that the State did not employ an impermissibly suggestive identification procedure.

{¶12} The photo array at issue consists of six photographs, displayed in two columns on a single sheet of paper. All of the photographs depict males who have short hair of a similar style, are of a similar complexion, and are positioned in front of a similar, blank backdrop. While all of the males in the photo array are wearing t-shirts, the males in the left column have on white t-shirts and the males in the right column have on black t-shirts. A picture of Davis was included in the array. He was one of the individuals wearing a black t-shirt.

{¶13} The only specific challenge that Davis makes to the array itself is that, because not all of the men in the array are wearing the same color t-shirt, the array is impermissibly suggestive. Because Harris indicated on the day of the shooting that Airman Taylor's assailant was wearing black, Davis argues, the fact that only half of the men in the photographs were wearing that color was suggestive. Yet, Harris described Airman Taylor's assailant as wearing a black hooded sweatshirt and black skull cap. None of the men in the photographs were wearing those items. Moreover, the suppression hearing testimony reflects that the Akron Police Department had two officers who were unfamiliar with the case present Harris with the array. Both officers testified at the suppression hearing and indicated that they were not even aware if Harris had chosen correctly when he selected Davis' photograph. In the absence of any further argument or supporting case law from Davis, we are not persuaded that the photograph identification procedure here was impermissibly suggestive. See, generally, *Villa* at ¶13 (rejecting argument that photo array was unduly suggestive).

{¶14} We also reject Davis' assertion that the identification was unreliable. Although Harris was unable to help create a sketch directly after the shooting, he gave a brief description of the shooter. Harris had the opportunity to view the shooter for several minutes while standing outside Whispers Nightclub. Further, Harris saw the array only two days after the shooting occurred and immediately selected the picture of Davis. Davis argues that Harris' identification was unreliable because Harris' trial testimony demonstrates that he was not a credible witness. Harris, however, did not testify at the suppression hearing, so his later testimony was not evidence upon which the trial court relied at the time it denied Davis' motion to suppress. The evidence from the suppression hearing does not support Davis' argument that the identification was unreliable. See *Davis*, 76 Ohio St.3d at 113. His second assignment of error is overruled.

Assignment of Error Number Four

"THE TRIAL COURT ERRED IN FAILING TO ENFORCE A PLEA AGREEMENT FOR A LESSER SENTENCE THAT WAS WRONGFULLY WITHDRAWN BY THE STATE AFTER HAVING BEEN ACCEPTED BY THE APPELLANT."

{¶15} In his fourth assignment of error, Davis argues that the court erred by not enforcing a plea agreement that the State wrongfully withdrew at trial. Specifically, he argues that he accepted a plea agreement the State proposed during jury deliberations, the State breached that agreement by withdrawing it after he accepted, and the trial court erred by not requiring the State to honor it.

{¶16} The record does not contain any evidence that the State engaged in any plea negotiations with Davis or his counsel while the jury deliberated or that the court was aware of any negotiations or agreement. In support of his argument on appeal, Davis cites to a statement of the proceedings that he filed with the trial court on April 22, 2010, pursuant to App.R. 9(C). App.R. 9(C) permits a party to prepare a statement of the evidence if no report of the evidence

was made or a transcript is unavailable. The rule requires, however, proper service of the statement and submission to the trial court "for settlement and approval." App.R. 9(C). The statement, "as settled and approved, *** [then] shall be included by the clerk of the trial court in the record on appeal." "It is the duty of the appellant to arrange for the timely transmission of *** any *** App.R. 9(C) statement *** and to ensure that the appellate court file actually contains all parts of the record that are necessary to the appeal." Loc.R. 5(A).

{¶17} No App.R. 9(C) statement exists in this case. Although Davis filed a statement of proceedings with the trial court one month before he filed his appeal, the trial court never approved the statement. Loc.R. 5(A)(2) ("A statement pursuant to App.R. 9(C) *** must be in written form and approved by the trial court."). Davis also failed to indicate on his docketing statement with this Court that the record would include an App.R. 9(C) statement. Accordingly, there is no evidence in the record that any plea negotiations took place, that the State breached any plea agreement, or that the trial court was aware of any alleged agreement. Davis' fourth assignment of error is overruled.

Assignment of Error Number One

> "APPELLANT'S 5TH, 6TH, AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED BY PROSECUTORIAL MISCONDUCT."

{¶18} In his first assignment of error, Davis argues that he was denied his right to a fair trial because the prosecutor engaged in misconduct during cross-examination and closing argument. We disagree.

{¶19} In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced. *State v. Smith* (1984), 14 Ohio St.3d 13,

14. "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. No. 03CA008239, 2004-Ohio-1227, at ¶6, citing *State v. Carter* (1995), 72 Ohio St.3d 545, 557. The defendant must show that, but for the prosecutor's misconduct, the jury would not have convicted him. *State v. Lollis*, 9th Dist. No. 24826, 2010-Ohio-4457, at ¶24. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, at ¶140, quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219.

{¶20} Davis argues that the prosecutor deprived him of a fair trial by referencing the fact that he was in jail during the pendency of the proceedings. Davis claims that the prosecutor repeatedly drew attention to the fact that he was in jail in order to imply his guilt and impugn his credibility.

{¶21} The prosecution did not refer to Davis' incarceration during its case-in-chief. The first mention of his incarceration occurred when the prosecutor cross-examined Davis' mother, Delonda Davis. Delonda testified on direct examination for the defense that Davis had dropped out of high school, but had attended Life Skills. Specifically, Delonda stated that Davis "used to" go to Life Skills. On cross-examination, the prosecutor asked Delonda why Davis stopped going to Life Skills. Delonda stated it was because "[h]e got incarcerated." She then clarified that Davis had been incarcerated for this incident. Davis has not pointed to the foregoing exchange as evidence of prosecutorial misconduct. Nor did he object to the exchange at trial or ask the court to strike that testimony. Accordingly, even apart from the conduct of the prosecutor that Davis claims is improper, the jury was aware that Davis was incarcerated as a result of this incident. See *State v. Feliciano*, 9th Dist. No. 09CA009595, 2010-Ohio-2809, at ¶30 (concluding that appellant failed to show the result of trial would have been different, but for

the testimony elicited by the alleged misconduct of the prosecutor, because other witnesses had reiterated the same testimony).

{¶22} The record reflects that Davis presented several witnesses, namely his mother, ex-girlfriend, and ex-girlfriend's mother, all of whom lent support to his alibi. His ex-girlfriend, Destini Vinson, testified that Davis was with her the entire night and next morning, during which timeframe the shooting occurred. The State repeatedly asked Vinson why, if she knew Davis was wrongfully being accused and held in jail, she never contacted the police or responded to them when they attempted to contact her on multiple occasions. Davis did not object to the vast majority of the questions that referred to his incarceration, but did have an objection sustained when the State asked Destini why she failed to act, despite "[holding] the keys to the jail house." The court also sustained an objection to the State's rebuttal during closing argument, wherein the prosecutor attacked the credibility of the defense witnesses on the basis that they "did virtually nothing for the six and a half months that an innocent man sat in prison, sat in jail." The prosecutor did not reference Davis' incarceration in the first portion of his closing argument, but did so in rebuttal after defense counsel repeatedly argued in his close that Destini did not come forward because "[s]he knows that he's not getting let go, no matter what she says."

{¶23} Assuming without deciding that the prosecutor acted improperly here, Davis fails to explain how the prosecutor's conduct deprived him of a fair trial. See *State v. Johnson*, 9th Dist. No. 09CA0054-M, 2011-Ohio-3623, at ¶72-73. Both Harris and Airman Taylor identified Davis as the shooter here. They both had an opportunity to view him on the night of the shooting and expressed certainty that he was the man that shot Airman Taylor in the face. After Harris identified Davis, the police began a manhunt for him that lasted until October 5, 2009. They displayed Davis' picture on the news, looked for him at multiple addresses, and asked several of

his family members if they knew his whereabouts. When the police finally did discover Davis, he ran from them on foot and hid behind a bush. Based on our review of the record, we conclude that Davis has not shown that the prosecutor's conduct here deprived him of a fair trial. *Lollis* at ¶24. Consequently, Davis' first assignment of error is overruled.

Assignment of Error Number Three

> "THE TRIAL COURT ERRED BY REFUSING TO PROPERLY CHARGE THE JURY THEREBY DEPRIVING THE APPELLANT OF DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE 5TH, 6TH, AND 14TH AMENDMENT UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶24} In his third assignment of error, Davis argues that the court erred in its charge to the jury. Specifically, Davis argues that the court misstated the law with respect to its alibi instruction and committed plain error.

{¶25} Generally, a defendant's failure to object to an allegedly erroneous jury instruction limits any review of the alleged error to a review for plain error. *State v. Johnson*, 9th Dist. No. 25525, 2011-Ohio-3941, at ¶20. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Waiver, however, "cannot form the basis of any claimed error under Crim.R. 52(B)." *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶23, quoting *State v. McKee* (2001), 91 Ohio St.3d 292, 299, fn. 3 (Cook, J., dissenting). "Waiver is the intentional relinquishment or abandonment of a right[.]" *Payne* at ¶23. "A defendant, through the statements of his counsel, may waive a jury instruction." *State v. Walker*, 9th Dist. No. 10CA0011, 2011-Ohio-517, at ¶25, citing *Feliciano* at ¶7.

{¶26} Before closing arguments concluded, the trial judge held a sidebar discussion with the attorneys and informed them that she had neglected to give the jury an alibi instruction along with the other instructions. The following discussion then took place on the record:

"THE COURT: *** Now, the standard jury instruction regarding notice of alibi is as follows -- the defendant -- if I gave an instruction, this is what it would be, if the parties want me to. The defendant has filed a notice of alibi. Alibi means elsewhere or a different place. The defendant claims he was elsewhere when Vincent Taylor was shot. If the evidence fails to establish that the defendant was elsewhere, the [S]tate still must prove all the essential elements of the crimes charged. Now, it is pretty neutral. I guess I will ask both sides, do you want me to give that instruction? I guess, [defense counsel], this is really up to you.

"[DEFENSE COUNSEL]: Yeah, yeah. I mean, let me hear that again. Let me read it.

"(Pause.)

"[DEFENSE COUNSEL]: That sound[s] reasonable.

"THE COURT: *** Do you want me to say it now or do you want me to wait until after the closing argument and then at that point talk about alibi[?]

"[DEFENSE COUNSEL]: I would say after."

The trial court later read the instruction, as stated, to the jury, adding only that the State's burden to prove the essential elements was to prove them beyond a reasonable doubt. Davis did not object to the instruction when it was read.

{¶27} This Court conducts a case-by-case review to determine whether an appellant has waived or forfeited an objection. *Feliciano* at ¶7. In *Feliciano*, we determined that defense counsel forfeited an objection to a jury instruction when the court asked the parties if they had reviewed the jury instructions, and defense counsel indicated that he had reviewed them and "had no objections to the proposed instructions." Id. at ¶6-8. We reached the opposite conclusion in *Walker* and concluded that defense counsel had waived any defect in an instruction. *Walker* at ¶30. There, defense counsel had an exchange with the trial judge

regarding a jury question that related back to one of the jury instructions. The court indicated its proposed response to the jurors, which was to refer them back to the instruction as it had been read. Defense counsel then stated "[w]ell, the jury instructions do put it out pretty clearly. *** I think it's pretty well explained." Id. at ¶28. In concluding that defense counsel waived any objection to the instruction that prompted the jury's question, this Court noted that "[t]he judge sought counsel's input and counsel agreed that the instructions as originally provided were appropriate and could not be improved upon." Id. at ¶30.

{¶28} The case at hand is more analogous to *Walker* than to *Feliciano*, given the attention drawn to the specific jury instruction at issue and counsel's affirmative representation that the instruction "sound[ed] reasonable." Even assuming that defense counsel forfeited rather than waived the alleged defect in the instruction, however, Davis has not shown that the trial court committed plain error. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Furthermore, a plain error is one shown to be outcome determinative. *State v. Waddell* (1996), 75 Ohio St.3d 163, 166. Davis has not set forth any argument, evidence in the record, or case law to show that the jury would not have convicted him, had they received a different alibi instruction. App.R. 16(A)(7). "If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone* (May 6, 1998), 9th Dist. No. 18349, at *8. Davis' third assignment of error is overruled.

### III

{¶29} Davis' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

DAVID M. WATSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.