[Cite as *State v. Morgan*, 2020-Ohio-3955.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 29490 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| TYLER MORGAN | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 2018-03-0697 |

DECISION AND JOURNAL ENTRY

Dated: August 5, 2020

CARR, Presiding Judge.

{¶1} Defendant-Appellant Tyler Morgan appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms but remands the matter for the issuance of a nunc pro tunc entry to correct the sentencing entry.

I.

{¶2} On February 13, 2018, teenagers A.P., B.K., J.P., and S.R. were in a car together going to meet John Smith. A.P. drove and was going to sell Smith marijuana. When A.P., B.K., J.P., and S.R. arrived, they discovered that not only was Smith present, Morgan was also present. When Smith and Morgan approached the front driver's side with guns, A.P. stepped on the gas and tried to drive away. As he was doing so, Smith and Morgan fired shots into the car, hitting S.R., who was in the backseat. Shortly thereafter, S.R. succumbed to his injuries.

{¶3} An indictment was filed in March 2018, charging Morgan with two counts of murder, four counts of felonious assault, and one count of aggravated robbery. A firearm

specification accompanied each count. In May 2018, a supplemental indictment was filed, charging Morgan with an additional count of murder, along with an accompanying firearm specification.

{¶4} Morgan filed a motion to suppress seeking to suppress any witness identification of Morgan and arguing that the identifications were unduly suggestive and unreliable. The State filed a response in opposition and a hearing was held on the matter. The trial court issued a written entry denying Morgan's motion to suppress.

{¶5} In August 2018, Morgan's case was consolidated with Smith's for purposes of trial. On February 4, 2019, Morgan pleaded no contest to one count of murder, count eight. The remaining charges and all specifications were subsequently dismissed. The case was referred to the probation department for a pre-sentence investigation ("PSI") report along with a victim impact statement. Sentencing was set for March 5, 2019. Sentencing was continued until April 16, 2019, to allow additional time for the PSI report to be completed. The trial court again continued sentencing, this time until May 10, 2019.

{¶6} On May 3, 2019, Morgan filed two motions, one arguing that the statutes implementing the violent offender database, which became effective March 20, 2019, were unconstitutional in their retroactive application, and a second arguing to rebut the presumption that Morgan should be classified as a violent offender. On May 7, 2019, Morgan filed a motion to withdraw his plea, asserting that he felt pressured to plea, was not guilty of the offenses, and that he was not advised that he would have to register as a violent offender upon his release from prison. The State opposed Morgan's motions. Hearings were held on the motions. Following the hearings, the trial court denied Morgan's motions to withdraw and the motion to rebut the

presumption that he should be classified as a violent offender. The trial court did not specifically rule on his motion challenging the constitutionality of the statutes.

{¶7} Ultimately, Morgan was sentenced July 10, 2019, to 15 years to life. On July 25, 2019, the trial court journalized a nunc pro tunc entry correcting the original entry to reflect that Morgan pleaded no contest as opposed to guilty. However, the trial court's entry still appears to reflect that Morgan pleaded no contest to count one, when the entry journalizing his plea, and the transcript of the plea hearing, indicate that Morgan pleaded no contest to count eight. The trial court can correct this clerical error via nunc pro tunc entry on remand. *See State v. Ibn-Ford*, 9th Dist. Summit No. 27380, 2015-Ohio-753, ¶ 8.

{¶8} Morgan has appealed, raising six assignments of error for our review. Upon review of the record in this matter, this Court questioned whether Morgan was a violent offender as defined in R.C. 2903.41(A). Both sides responded; the State argued that Morgan qualified as a violent offender under R.C. 2903.41(A)(2) and Morgan argued that he did not satisfy either R.C. 2903.41(A)(1) or 2903.41(A)(2).

II.

**R.C. 2903.41(A)**

{¶9} Before addressing Morgan's assignment of error, we address whether he meets the statutory definition of a violent offender. If he does not, he cannot be required to register for the violent offender database, *see* R.C. 2903.42(A)(1), and there would be no need to address whether R.C. 2903.41 to 2903.44 is constitutional. *See Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, ¶ 29 ("[A] court should avoid reaching constitutional issues if a case can be decided on other grounds.").

{¶10} R.C. 2903.41(A) provides:

"Violent offender" means any of the following:

(1) A person who on or after the effective date of this section is convicted of or pleads guilty to any of the following:

(a) A violation of section 2903.01, 2903.02, 2903.03, 2905.01 of the Revised Code or a violation of section 2905.02 of the Revised Code that is a felony of the second degree;

(b) Any attempt to commit, conspiracy to commit, or complicity in committing any offense listed in division (A)(1)(a) of this section.

(2) A person who on the effective date of this section has been convicted of or pleaded guilty to an offense listed in division (A)(1) of this section and is confined in a jail, workhouse, state correctional institution, or other institution, serving a prison term, term of imprisonment, or other term of confinement for the offense.

{¶11} While the trial court concluded that Morgan qualified as a violent offender under R.C. 2903.41(A)(1), we disagree. At the time of Morgan's plea, the statute was not yet in effect. Thus, it becomes important to determine the meaning of the words "convicted of or pleads guilty to" in the statute. In *State v. Mullins*, 10th Dist. Franklin No. 14AP-480, 2015-Ohio-3250, ¶ 6-11, the Tenth District determined that similar language in Ohio's arson-offender registration scheme meant that "convicted" "mean[s] the determination of guilt and not the imposition of sentence." *Id.* at ¶ 11. The Tenth District reasoned that, because the word "convicted" appears in the same phrase as "pleads guilty to[,]" the word "convicted" must mean "only the determination of guilt- not the imposition of sentence." *Id.* at ¶ 10-11. We agree with the analysis of the Tenth District, and, thus, conclude that R.C. 2903.41(A)(1) is inapplicable to Morgan given that he pleaded no contest and was found guilty prior to the effective date of the statute.

{¶12} Nonetheless, we disagree with Morgan that R.C. 2903.41(A)(2) is inapplicable to him. On the effective date of the statute, Morgan had been convicted of or pleaded guilty to an applicable offense as he had pleaded no contest to murder. *See* R.C. 2903.41(A)(1)-(2). From the record, it is also clear that Morgan was in jail at the time of sentencing because he had pleaded no

contest to the charge of murder. *See* R.C. 2903.41(A)(2); *see also State v. Hubbard*, 12th Dist. Butler No. CA2019-05-086, 2020-Ohio-856, ¶ 39. Accordingly, we determine that Morgan qualifies as a violent offender pursuant to R.C. 2903.41(A)(2).

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY NOT FINDING THE VIOLENT OFFENDER REGISTRY UNCONSTITUTIONAL[.]

**{¶13}** Morgan argues in his first assignment of error that the trial court erred in failing to determine that the statutes implementing the violent offender database, R.C. 2903.41 through 2903.44, are unconstitutional in their retrospective application. Morgan additionally asserts that the statutes violate the separation of powers doctrine.

**{¶14}** Here, the trial court did not expressly rule on Morgan's motion challenging the constitutionality of the statutes. Nonetheless, generally, when a trial court fails to rule on a motion prior to the entry of the final judgment, the motion will be considered denied. *See State v. Olah*, 146 Ohio App.3d 586, 592 (9th Dist.2001), fn. 2. Thus, we will review Morgan's assignment of error under that premise.

**{¶15}** We begin by noting that Morgan did not raise his separation of powers argument below. "The failure to raise a constitutional issue at the trial level forfeits the right to make a constitutional argument on appeal. While a defendant who forfeits such an argument still may argue plain error on appeal, this court will not sua sponte undertake a plain-error analysis if a defendant fails to do so." (Internal citation omitted.) *State v. McCraw*, 9th Dist. Medina No. 14CA0009-M, 2015-Ohio-3809, ¶ 5. As Morgan has not developed a plain error argument on appeal, we overrule this argument on that basis. *See id.*

**{¶16}** "S.B. 231 'provides for the establishment and operation by the Bureau of Criminal Identification and Investigation (BCII) of a Violent Offender Database (VOD), [and] requires

persons convicted of specified violent offenses in Ohio (violent offenders) or those convicted of a comparable offense in another state (out-of-state violent offenders) who become aware of the Database to enroll in the Database.' Ohio Legislative Service Commission, Bill Analysis of S.B. 231, as introduced in the Senate on November 14, 2017, at 1." *Hubbard* at ¶ 13. "The statutory provisions set forth in R.C. 2903.41 through 2903.44 identify the enrollment requirements and persons subject to those requirements for the violent offender database, provide notice of the manner in which the presumption of enrollment may be rebutted, set forth guidelines for notifying violent offenders of the duty to enroll in the database and for maintaining enrollment, and impose penalties for violent offenders' failure to enroll in the database." *Id.*

{¶17} "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution." (Internal citations and quotations omitted.) *State v. Cook*, 83 Ohio St.3d 404, 409 (1998).

{¶18} Section 28, Article II of the Ohio Constitution provides that "[t]he general assembly shall have no power to pass retroactive laws." However, "[t]he issue of whether [these statutes] may be constitutionally applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply." *Cook* at 410.

{¶19} Here, an examination of the statutory language makes it clear that the General Assembly intended the statutes to apply retrospectively. R.C. 2903.42 provides that, "[f]or each person who is classified a violent offender, it is presumed that the violent offender shall be required to enroll in the violent offender database with respect to the offense that so classifies the person

and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database."

{¶20}   R.C. 2903.41(A) defines a "violent offender" as:

"Violent offender" means any of the following:

(1) A person who on or after the effective date of this section is convicted of or pleads guilty to any of the following:

(a) A violation of section 2903.01, 2903.02, 2903.03, 2905.01 of the Revised Code or a violation of section 2905.02 of the Revised Code that is a felony of the second degree;

(b) Any attempt to commit, conspiracy to commit, or complicity in committing any offense listed in division (A)(1)(a) of this section.

(2) A person who on the effective date of this section has been convicted of or pleaded guilty to an offense listed in division (A)(1) of this section and is confined in a jail, workhouse, state correctional institution, or other institution, serving a prison term, term of imprisonment, or other term of confinement for the offense.

{¶21}   Because R.C. 2903.41(A) necessarily labels as violent offenders some individuals whose specified criminal conduct occurred prior to the effective date of the statutes and presumptively subjects them to enrollment in the database, *see* R.C. 2903.42(A), it is clear that the General Assembly intended the enrollment requirements of the statutes to apply retrospectively. *See also Hubbard*, 2020-Ohio-856, at ¶ 23-24; *State v. Jarvis*, 5th Dist. Muskingum No. CT 2019-0029, 2020-Ohio-1127, ¶ 19-20; *State v. Caldwell*, 1st Dist. Hamilton No. C-130812, 2014-Ohio-3566, ¶ 20 (discussing similar language in the arson-offender registration statutes).

{¶22}   Accordingly, we must proceed to the second step of the analysis:   we must determine whether the statutes are substantive or remedial.  *See Cook* at 411.  "A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively."  *Id.*  "A statute is 'substantive' if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligation, or liabilities as to

a past transaction, or creates a new right. Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right." (Internal citation omitted.) *Id.* "Repeatedly, the [Supreme C]ourt has held that the commission of a felony is not a past transaction creating a reasonable expectation of finality: Except with regard to constitutional protections against ex post facto laws * * *, felons have no reasonable right to expect that their conduct will never thereafter. be made the subject of legislation." (Internal quotations and citations omitted.) *Caldwell* at ¶ 22; *see also State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, ¶ 43-44.

{¶23} While the Fifth District in *Jarvis* concluded that these statutory provisions are unconstitutional as they violate Section 28, Article II of the Ohio Constitution, *see Jarvis* at ¶ 37, the Twelfth District in *Hubbard* found the provisions to be constitutional. *See Hubbard* at ¶ 37. Much of the debate between the districts centered on the Supreme Court of Ohio's decision in *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, and what that decision meant for how courts should determine whether a law violates the Ohio Constitution's retroactivity clause. *See Hubbard* at ¶ 26-31 and *Jarvis* at ¶ 24-36.

{¶24} In *Hubbard*, the Twelfth District opined that it appeared the Supreme Court in *Williams* "depart[ed] from the principle that the commission of a felony does not create an expectation of finality[.]" *Hubbard* at ¶ 27.

> In *Williams*, the supreme court was presented with the question of whether Senate Bill 10's sex-offender registration requirements, stemming from Ohio's implementation of the federal Adam Walsh Act, were unconstitutionally retroactive. Prior supreme court opinions had upheld the retroactive application of earlier versions of the sex-offender registration scheme. However, in *Williams*, [w]ithout considering whether the offenders affected by the changes had a vested right or a reasonable expectation of finality in their registration status, the [supreme] court concluded that the changes rendered the statutory scheme so punitive that they constituted new burdens, duties, obligations, or liabilities as to a past

transaction. The supreme court, therefore, held that Senate Bill 10's sex-offender registration provisions were unconstitutional if applied retroactively.

(Internal quotations and citations omitted.) *Hubbard* at ¶ 27.

**{¶25}** Following *Williams*, however, the Twelfth District determined that the Supreme Court "returned to analyzing retroactive legislation under the familiar framework of whether the retroactive application of a new law burdened a vested right or a reasonable expectation of finality." *Hubbard* at ¶ 29, quoting *Caldwell*, 2014-Ohio-3566, at ¶ 25.

**{¶26}** The Fifth District considered the Twelfth District's position and instead found that "*Williams* is *not* hard to reconcile with the court's previous pronouncements that the commission of a felony does not create a reasonable expectation of finality." (Emphasis sic.) *See Jarvis*, 2020-Ohio-1127, at ¶ 34. The Fifth District concluded that the Supreme Court's analysis in *Williams* and in cases decided subsequently centered on whether the statute imposed new or additional burdens, duties, obligations, or liabilities as to a past transaction. *Id.* Nonetheless, the Fifth District, in reviewing the provisions of the violent offender statutes, concluded that the scheme was unconstitutional as applied retroactively. *Id.* at ¶ 37.

**{¶27}** After carefully considering both positions, as well as the related law, we agree with the Twelfth District's conclusion and determine that the statutory provisions, in their retroactive application, are constitutional. The provisions are "not so punitive that they impose a new burden in the constitutional sense, as contemplated by *Williams*[,]" and, instead, are remedial in nature. *Hubbard* at ¶ 37.

**{¶28}** Notwithstanding the foregoing, we cannot say that *Williams* is an outlier or necessarily a departure from precedent. In our view, *Williams* stands for the proposition that every new enactment of a statutory scheme must be evaluated to determine whether it satisfies the constitutional standard. In *Williams*, the Supreme Court simply determined that, while previous

enactments contained portions that "suggested" the scheme was punitive, the new enactment removed all doubt and was clearly punitive. *See Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, at ¶ 11, 16. In so doing, the Supreme Court opined that "[n]o one change compel[led] [its] conclusion that S.B. 10 is punitive. It is a matter of degree whether a statute is so punitive that its retroactive application is unconstitutional." *Id.* at ¶ 21.

{¶29} Thus, in order to evaluate whether the statutory provisions are constitutional in their retroactive application, it is important to examine the particulars of the statutory scheme. "For each person who is classified a violent offender, it is presumed that the violent offender shall be required to enroll in the violent offender database with respect to the offense that so classifies the person and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database." R.C. 2903.42(A)(1). That presumption may be rebutted by the offender. R.C. 2903.42(A)(1). In order to rebut the presumption, the offender has the burden to demonstrate by a preponderance of the evidence "that the offender was not the principal offender in the commission of the offense that classifies the person a violent offender." R.C. 2903.42(A)(4). If the trial court determines that the offender has rebutted the presumption, the trial court, after considering certain factors, could still conclude the offender is required to enroll in the database. R.C. 2903.42(A)(4)(a).

{¶30} These foregoing provisions differentiate this scheme from S.B. 10. S.B. 10 included automatic registration requirements based upon the offense committed that could not be challenged. *See Williams* at 18; *Hubbard*, 2020-Ohio-856, at ¶ 34. Unlike the situation faced by offenders subject to S.B. 10, under the provisions at issue, it was not guaranteed that Morgan would be subject to enrollment in the violent offender database. *Compare Williams* at ¶ 18 *with* R.C. 2903.42(A)(1); *see also Hubbard* at ¶ 34. Instead, for each person considered a violent offender

there exists a rebuttable presumption that the individual will be required to enroll in the database. R.C. 2903.42(A)(1).

{¶31} As for a violent offender's duties under the statutes, every violent offender who has duties imposed pursuant to R.C. 2903.42 and is classified as a violent offender pursuant to R.C. 2903.41(A)(2) must enroll in the violent offender database personally with the sheriff of the county in which the offender resides within ten days after the offender's release from jail or prison. R.C. 2903.43(A)(2). Annually, the offender must re-enroll in the violent offender database for a period of ten years. R.C. 2903.43(D)(1). R.C. 2903.43(C)(2) details the information the initial enrollment form must contain:

(a) The violent offender's or out-of-state violent offender's full name and any alias used;

(b) The violent offender's or out-of-state violent offender's residence address;

(c) The violent offender's or out-of-state violent offender's social security number;

(d) Any driver's license number, commercial driver's license number, or state identification card number issued to the violent offender or out-of-state violent offender by this or another state;

(e) The offense that the violent offender or out-of-state violent offender was convicted of or pleaded guilty to;

(f) The name and address of any place where the violent offender or out-of-state violent offender is employed;

(g) The name and address of any school or institution of higher education that the violent offender or out-of-state violent offender is attending;

(h) The identification license plate number of each vehicle owned or operated by the violent offender or out-of-state violent offender or registered in the violent offender's or out-of-state violent offender's name, the vehicle identification number of each vehicle, and a description of each vehicle;

(i) A description of any scars, tattoos, or other distinguishing marks on the violent offender or out-of-state violent offender.

{¶32} An enrolling offender also must provide fingerprints and palm prints and the sheriff must take a photograph of the violent offender at the time of enrollment. R.C. 2903.43(C)(3). The enrollment in the violent offender database terminates upon the expiration of the ten-year period; however, the period may be extended indefinitely under certain circumstances. R.C. 2903.43(D)(2). If the period is extended, it is nonetheless subject to termination pursuant to R.C. 2903.44. *See* R.C. 2903.43(D)(2). Each violent offender who has had duties imposed by R.C. 2903.42 must notify the sheriff with whom the offender most recently enrolled in person within three business days of a change of address that occurs during the enrollment period. R.C. 2903.43(E). The bureau of criminal identification and investigation shall establish and maintain the violent offender database and make the database available to federal, state, and local law enforcement officers. R.C. 2903.43(F)(2). However, the database is not a public record under R.C. 149.43. R.C. 2903.43(F)(2). Nonetheless, absent an exception set forth in the statute, "any statements, information, photographs, fingerprints, or materials that are provided pursuant to this section by a violent offender" in the possession of a county sheriff are public records open to public inspection. R.C. 2903.43(F)(3)(a). However, the offender's social security number and driver's license number are not public records and are not open to public inspection. R.C. 2903.43(F)(3)(b).

{¶33} Again, these provisions are substantively different from those in S.B. 10. Morgan's requirements under the violent offender registry would be far less onerous than those of an offender subject to S.B. 10. Offenders subject to S.B. 10 could be required to register in multiple counties, *see* R.C. 2950.04(A)(2), and verify the information as often as every ninety days, *see* R.C. 2950.06(B)(3). In addition, offenders subject to S.B. 10 are prohibited from residing within a thousand feet of a school, preschool, or child day care. *See* 2950.034(A). Further, S.B. 10 includes community notification provisions, *see* R.C. 2950.11, and authorizes the dissemination of

information about the offender on the internet.  *See* R.C. 2950.13(A)(11).  Whereas Morgan only would be required to re-enroll annually and would only be required to initially enroll in his county of residence. R.C. 2903.43(D)(1); R.C. 2903.43(A)(2).  However, he would be required to report changes to his address of residence, employment, or school.  *See* R.C. 2903.43(E); R.C. 2903.41(F) (defining change of address).  Morgan also would not be prohibited from residing near a school or day care.  *See Hubbard*, 2020-Ohio-856, ¶ 35.  And while certain information Morgan would have to report would be public record, *see* R.C. 2903.43(F)(3)(a), the statutes at issue do not include community notifications provisions or a publicly available internet registry.

{¶34}  Finally, the statutes at issue provide penalties for violent offenders who recklessly fail to enroll, re-enroll, or notify the sheriff of a change of address.  R.C. 2903.43(I)(1).  Whoever fails to comply with R.C. 2903.43(I)(1) is guilty of a felony of the fifth degree.  R.C. 2903.43(I)(2).  This is also distinguishable from the provisions of S.B. 10.  "[T]he failure to register as a sex offender as required by Chapter R.C. 2950 constitutes a felony of the same degree as that of the underlying sexually oriented offense.  R.C. 2950.99.  This means that if a sex offender committed a first-degree felony sex offense and the offender fails to register as required by Chapter R.C. 2950, that failure constitutes another first-degree felony and carries with it a potential indefinite prison term of 11 to 16.5 years."  *Hubbard*, 2020-Ohio-856, at ¶ 36.

{¶35}  Overall, after carefully and thoroughly considering the statutes at issue, we cannot say that their retroactive application violates the Ohio Constitution.  The statutory scheme at issue is vastly different than S.B. 10, which the Supreme Court determined to be unconstitutional.  The violent offender database is not so punitive as to impose a new burden in the constitutional sense as contemplated by *Williams*.  *See Hubbard* at ¶ 37.  Instead, the scheme is remedial in nature.  *See id.*

{¶36} Morgan's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY REQUIRING TYLER TO REGISTER AS A VIOLENT OFFENDER[.]

{¶37} Morgan argues in his second assignment of error that the trial court erred by requiring Morgan to register as a violent offender.

{¶38} R.C. 2903.42 states:

> For each person who is classified a violent offender, it is presumed that the violent offender shall be required to enroll in the violent offender database with respect to the offense that so classifies the person and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database. The presumption is a rebuttable presumption that the violent offender may rebut as provided in division (A)(4) of this section, after filing a motion in accordance with division (A)(2)(a) or (b) of this section, whichever is applicable.

{¶39} The motion shall assert that the offender was not the principal offender. *See* R.C. 2903.42(A)(2)(a),(b). "[T]he offender has the burden of proving to the court that is sentencing, or that has sentenced, the offender, by a preponderance of the evidence, that the offender was not the principal offender in the commission of the offense that classifies the person a violent offender." R.C. 2903.42(A)(4). "If the violent offender does not prove to the court, by a preponderance of the evidence, that the offender was not the principal offender in the commission of the offense that classifies the person a violent offender, the court shall issue an order specifying that the offender is required to enroll in the violent offender database and has all VOD duties with respect to that offense, and shall provide a copy of the order to the prosecutor and to the bureau of criminal identification and investigation." R.C. 2903.42(A)(4)(b).

{¶40} Morgan filed a motion in the trial court in order to rebut the presumption that he should be required to enroll in the violent offender database. He asserted that he was not the principal offender and that he had no other prior convictions for offenses of violence. At the

hearing on the motion, Morgan presented no testimony but did offer his presentence investigation report as evidence. Ultimately, the trial court denied Morgan's motion concluding that Morgan failed to meet his burden to establish that he was not the principal offender.

{¶41} In reviewing the presentence investigation report, we cannot say that it demonstrates that Morgan was not the principal offender. In fact, the sequence of events, as summarized by the author of the report, supports just the opposite. That summary indicates that Morgan and Smith both had weapons and that both shot at the vehicle. In addition, witnesses reported hearing the sound of two different guns fire six or seven shots at the car. While Morgan denied shooting at the vehicle and denied possessing a gun, the trial court was not required to believe him. We cannot say that Morgan has demonstrated that the trial court erred in determining that Morgan did not meet his burden.

{¶42} Morgan's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

TYLER'S CONVICTIONS WERE NOT BASED UPON SUFFICIENT EVIDENCE AS A MATTER OF LAW[.]

### ASSIGNMENT OF ERROR IV

TYLER'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶43} Morgan argues in his third assignment of error that his conviction was based upon insufficient evidence. He asserts in his fourth assignment of error that his conviction was against the weight of the evidence.

{¶44} In this matter, Morgan entered a no-contest to plea to count eight, which was a charge of murder. Under Crim.R. 11(B)(2), "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information,

or complaint * * *." "Where the indictment, information, or complaint contains sufficient allegations to state a felony offense and the defendant pleads no contest, the court must find the defendant guilty of the charged offense." *State v. Byrd*, 81 Ohio St.3d 582 (1998), syllabus. Morgan has made no argument about the sufficiency of the allegations in the indictment. By pleading no contest, Morgan waived any challenge to the sufficiency and the weight of the evidence. *See State v. Mason*, 9th Dist. Summit No. 27715, 2016-Ohio-7081, ¶ 29 (sufficiency); *see also State v. Hodge*, 9th Dist. Lorain No. 01CA007913, 2002 WL 242106, *2 (Feb. 20, 2002) (sufficiency); *State v. Jackson*, 9th Dist. Summit Nos. 24463, 24501, 2009-Ohio-4336, ¶10 (manifest weight).

{¶45} Morgan's third and fourth assignments of error are overruled.

### ASSIGNMENT OF ERROR V

TYLER'S PLEA WAS NOT KNOWINGLY, INTELLIGENTLY, OR VOLUNTARILY MADE[.]

{¶46} Morgan argues in his fifth assignment of error that his plea was not knowingly, intelligently, or voluntarily entered.

{¶47} "A plea is invalid where it has not been entered in a knowing, intelligent, and voluntary manner." *State v. Gonzalez,* 9th Dist. Summit No. 29018, 2019-Ohio-4882, ¶ 5, quoting *State v. Farnsworth*, 9th Dist. Medina No. 15CA0038-M, 2016-Ohio-7919, ¶ 4. Crim.R. 11(C)(2) states:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶48} Morgan argues that his plea was not knowingly, intelligently, or voluntarily entered because the trial court failed to inform him of the requirement that he register with the violent offender registry, because the trial court failed to advise him that he could be convicted because he was complicit, and because the trial court failed to proceed promptly to sentencing.

{¶49} With respect to the violent offender registry, the statutes at issue, R.C. 2903.41 through 2903.44, did not become effective until March 20, 2019. *See* Am.Sub.S.B. No. 231, 2018 Ohio Laws 117. Morgan pleaded no contest on February 4, 2019 and his sentencing was originally scheduled for March 5, 2019. Thus, at the time of Morgan's plea, the trial court had no reason to anticipate that it would need to inform Morgan of any duties under the statutes. *See* R.C. 2903.41(A)(1) (defining as a violent offender, in part, as "[a] person who on or after the effective date of this section is convicted of or pleads guilty to" an enumerated offense) and R.C. 2903.42(A)(1) (providing that only those offenders classified as violent offenders under R.C. 2903.41(A)(1) shall be notified by the sentencing court prior to sentencing of the registry procedures and requirements). Morgan has not explained why such a warning would have been warranted at his plea hearing in light of the circumstances before us. *See* App.R. 16(A)(7).

{¶50} Morgan also argues that his plea was not knowing, voluntary, and intelligent because the trial court failed to advise him that he could be convicted if he was complicit. Morgan cites no law or authority in support of his position. *See* App.R. 16(A)(7). The trial court informed

Morgan that by pleading no contest to count 8, he was making an admission that the facts underlying the offense exist and that, by pleading no contest, the trial court could then enter a finding of guilt against him. *See* Crim.R. 11(B)(2); *see also Byrd*, 81 Ohio St.3d 582, at syllabus.

{¶51} Finally, Morgan appears to assert that his plea was not knowing, intelligent, and voluntary because the trial court did not comply with Crim.R. 32(A) as it did not sentence him until after the statutes concerning the violent offender registry went into effect even though the trial court had no choice in the sentence it was to impose. In relevant part, Crim.R. 32(A) provides that "[s]entence shall be imposed without unnecessary delay." Morgan has not explained how any alleged failure to comply with Crim.R. 32(A) affected the voluntary, knowing, or intelligent nature of his plea. *See* App.R. 16(A)(7). Moreover, his stated assignment of error is limited to an assertion that his plea was not knowing, intelligent, and voluntary. Thus, a separate, independent challenge to the trial court's compliance with Crim.R. 32(A) is outside the scope of his stated assignment of error. *See State v. Miller*, 9th Dist. Summit No. 27048, 2015-Ohio-279, ¶ 18.

{¶52} Morgan has not demonstrated that his plea was not knowingly, intelligently, and voluntarily made. Morgan's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED BY NOT GRANTING TYLER'S MOTION TO SUPPRESS[.]

{¶53} Morgan argues in his sixth assignment of error that the trial court erred in denying his motion to suppress. Specifically, he contends that the police's Facebook post was unduly suggestive and that the police failed to comply with R.C. 2933.83(A)(6).

{¶54} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual

questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶55} "Determining the admissibility of identification testimony is a two-step process. First, a court must consider whether the identification procedure was unnecessarily suggestive. If so, it then must consider whether the identification was ultimately unreliable under [ ] all of the circumstances." (Internal quotations and citations omitted.) *State v. Tyler*, 9th Dist. Summit No. 29225, 2019-Ohio-4661, ¶ 9. "A lineup is unduly suggestive if it steers the witness to one suspect, independent of the witness's honest recollection." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 208. As to reliability, "[t]he factors to consider are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." *State v. Broom*, 40 Ohio St.3d 277, 284 (1988); *see also State v. Davis*, 9th Dist. Summit No. 25399, 2011-Ohio-5630, ¶ 11. "[N]o due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is instead the result of observations at the time of the crime." *State v. Davis*, 76 Ohio St.3d 107, 112 (1996).

{¶56} "The rationale for excluding a tainted pretrial identification is to protect the defendant from misconduct by the state." *State v. Brown*, 38 Ohio St.3d 305, 310 (1988). "When the questionable circumstances of an identification procedure are not due to state action, the

reliability of the identification is a question going to the weight of the testimony, not its admissibility." *Adams* at ¶ 209. In such cases, "any prejudicial effect of the testimony could [] be[] cured by effective cross-examination." *Brown* at 311.

{¶57} First, Morgan complains that the Akron police's Facebook post which depicted a photo of Morgan alongside his name was unduly suggestive and tainted the identifications of A.P. and B.K. However, the Facebook post was not put up until February 15, 2018, the day after A.P. and B.K. made their identifications. Thus, it could not have played a role in their identifications of Morgan. In fact, it was the information provided by A.P. that led to the Facebook post. A.P. named Morgan as being involved prior to being shown any photographs. A.P. was familiar with Morgan from school and, at his interview, provided police with a description of Morgan. From that description, police looked at records from the school and then located a driver's license photo of the person the police thought A.P. might be referring to. When shown that photo of Morgan, A.P. confirmed that that was the person who was involved. While B.K. did not know Morgan prior to the shooting, and was told Morgan's name by A.P., B.K. named Morgan as being involved in the shooting during her police interview. B.K. was not even shown a photograph of Morgan during her interview. Thus, both A.P.'s and B.K.'s identification of Morgan was the result of information they provided to police and not the result of an identification procedure as it is typically understood. Notably, in the section of his brief addressing the Facebook post, Morgan does not expressly challenge J.P.'s identification of Morgan. *See* App.R. 16(A)(7). This Court will not create an argument on this issue on Morgan's behalf. *See State v. Flowers*, 9th Dist. Summit No. 25841, 2012-Ohio-3783, ¶ 27. Given Morgan's arguments on appeal, he has not demonstrated that the trial court erred in denying his motion to suppress based upon the police's Facebook posting.

{¶58} Second, Morgan asserts that the police violated R.C. 2933.83(A)(6) by only showing Morgan's photo to the three witnesses. However, again, Morgan's contention is based on inaccurate facts. Neither B.K. nor J.P. was shown a photo of Morgan while being interviewed. Further, Morgan did not raise a violation of R.C. 2933.83(A)(6) below in his motion to suppress or at the suppression hearing, *see State v. Hale*, 9th Dist. Summit No. 28334, 2017-Ohio-7048, ¶ 11, nor has he explained how a potential violation of R.C. 2933.83(A)(6) requires suppression of A.P.'s identification under the circumstances of this case. *See* App.R. 16(A)(7). Given the foregoing, this argument will not be further considered. *See Hale* at ¶ 11; App.R. 16(A)(7).

{¶59} Morgan has not demonstrated that the trial court erred in denying his motion to suppress. His sixth assignment of error is overruled.

III.

{¶60} Morgan's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed, but the matter is remanded for the issuance of a nunc pro tunc entry to correct the sentencing entry.

Judgment affirmed,<br>and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

DONNA J. CARR
FOR THE COURT

SCHAFER, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

WESLEY C. BUCHANAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE CORGAN, Assistant Prosecuting Attorney, for Appellee.